### J. HOMER FRITCH, Inc., et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. July 10, 1916.)

#### No. 2683.

ESTOPPEL ⊜⇒58—CONSTRUCTION OF CONTRACTS—EQUITABLE ESTOPPEL.

One who, on being notified of the acceptance of his offer to enter into a contract, is also advised that the acceptance was based on a certain construction of the offer, unless he acts promptly, is estopped to deny that such construction was the correct one, provided the other party has acted upon it to his injury, but not otherwise.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 144, 145; Dec. Dig. ⊜⇒58.]

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action at law by J. Homer Fritch, Incorporated, E. T. Kruse, Mary Bell Parker Burns, Cecelia Sudden, James Hogg, James P. Taylor, and Kate E. Spiers, against the United States. Judgment for defendant, and plaintiffs bring error. Affirmed.

The plaintiffs in error were the owners of the steamer Homer. For several years prior to 1911 the Department of Commerce and Labor had chartered the steamer for three or four months in the summer of each year for use in connection with the Alaska seal fisheries. Bowers, the Commissioner of Fisheries, and Lembkey, the agent of the Department of Commerce and Labor for the Alaska seal fisheries, recognizing the fitness of the Homer for their purposes, desired to purchase her, and they entered into negotiations with the owners with that end in view. The negotiations failed for the reason that the department had but a fund of $20,000 available for purchasing, and the purchase price was $45,000. In the charter party for 1911 there was inserted in paragraph 21: "That the charterers have the option, at any time during this charter, of purchasing the said vessel for the sum of forty-five thousand ($45,000) dollars, against which any amount paid for the hire of the said vessel, less cost of operation, shall be set off and deducted, but

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 16, 1916.

that the purchasers shall pay interest at the rate of 6% per annum (and insurance) on the amount of purchase money from the date of this charter to the completion of sale." The charter party was entered into on April 24, 1911, and was for a period of 3½ months, with the option to extend the same 30 days. The owners were to furnish all officers, seamen, engineers, and firemen, but the charterer had the right to appoint a supercargo. On September 12, 1911, the steamer was at San Francisco ready to be surrendered to the owners, and the owners were notified that the voyage was terminated, that the cargo had been discharged, and that at 12 o'clock noon of that day the vessel would be turned over to them. But at 10:30 a. m. of that day the owners received from Washington the following telegram of that date: "Would like to have option for purchase of Homer extended thirty days on terms mentioned in paragraph twenty-one of charter otherwise charter to terminate as provided therein answer. Chas. Earl, Acting Secretary of the Department of Commerce and Labor." The agent of the owners on receipt of the telegram conferred with Lembkey, who was at San Francisco, and Lembkey indorsed the following on the charter party agreement: "According to telegram of September 12th received from Mr. Chas. Earl, Acting Secretary, Department of Commerce & Labor, this charter is hereby extended for a period of 30 days from September 13, 1911. Subject to approval of Dept. of Commerce & Labor." On September 14th, the owners sent the following telegram to the Acting Secretary of the Department of Commerce and Labor at Washington: "As requested in your telegram of twelfth instant charter steamer Homer hereby extended for further period of thirty days from September thirteenth nineteen eleven with option of purchase." On October 10, 1911, the owners sent the following telegram to Bowers, Commissioner of Fisheries at Washington: "Your extension of charter and option of Steamer Homer expires October 13th. Should this expire without further action on the part of the department ship will go to holder of second option upon which one thousand dollars has been paid. Should you indicate that you wish to exercise your option, terms of payment can be satisfactorily arranged without doubt. Kindly wire your wishes in the premises." On October 12th, the Acting Commissioner of Fisheries answered the dispatch, saying, "Replying yours Oct. ten, Bureau of Fisheries is not in position to purchase Homer." On October 25th, the Acting Secretary of Commerce and Labor wrote to the owner as follows: "Replying to your letter of the 14th instant, inclosing duplicate bills for charter of the steamship Homer from September 1 to October 13, 1911, inclusive, you are informed that the vessel was discharged and relinquished to her owners on September 12th noon, and that the department has not extended or renewed the charter nor approved the action of any officer of the department attempting to bind it for charter money beyond that time." The correspondence explains the issues on which the case was tried in the court below. There was a stipulation of facts, and some oral testimony was taken on behalf of the plaintiffs, but they add nothing material to what has been stated. The court made the following findings of fact: "First, that the steamship Homer was fully discharged of her cargo and turned over to the owners by the charterers, on or prior to the 12th day of September, 1911, at the port of San Francisco, California. Second, that W. I. Lembkey did not have authority to extend the charter party beyond the 12th day of September, 1911, and his attempted extension thereof was not ratified or approved by the Department of Commerce and Labor, or by any department or agent of the defendant. Third, that there was no contract or agreement between plaintiff and the defendant extending the charter party beyond September 12, 1911."

Ira A. Campbell and John F. Cassell, both of San Francisco, Cal., for plaintiffs in error.

John W. Preston, U. S. Atty., and M. A. Thomas, Asst. U. S. Atty., both of San Franciso, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

234 F.—39

GILBERT, Circuit Judge (after stating the facts as above). Each party to the action claims that its respective contention is sustained by the language of the telegram of September 12, 1911:

"Would like to have option for purchase of Homer extended thirty days on terms mentioned in paragraph twenty-one of charter otherwise charter to terminate as provided therein answer."

The defendant claims that it distinctly called for extension of the option to purchase and for nothing else. The plaintiffs claim it meant extension of both the charter party and the option to purchase, because the charter party included the option to purchase, and there had been an understanding that all moneys paid on the charter, less cost of operation, should be credited on the purchase price of the vessel, and that this meaning is made certain by the words "otherwise charter to terminate as provided therein," which words, it is said, indicate that if the option were extended, the charter was not to terminate, and that the whole dispatch means this:

"Would like to have option for purchase extended thirty days; if you do not consent the charter shall terminate as provided therein."

But counsel for the defendant say that the meaning of the word "otherwise" as used in the telegram is "in other respects," and that the dispatch means:

"Would like to have option for purchase extended thirty days; in other respects the charter to terminate as provided therein."

If that was the message intended to be conveyed, the word "otherwise" was unfortunately chosen. That meaning, it seems to us, is not suggested by the other words of the telegram, and is not the natural meaning. However, if the case rested there, and there were no more to the correspondence than a telegram accepting the proposition of the Acting Secretary, we should hold that the minds of the parties never met upon the understanding which the plaintiffs gave to the dispatch. But the dispatch called for an answer, and two days later the answer was sent:

"As requested in your telegram of twelfth instant, charter steamer Homer hereby extended for further period of thirty days from September thirteenth nineteen eleven, with option of purchase."

That telegram distinctly advised the Acting Secretary that his proposition of September 12th was understood to be a proposition to extend both the charter and the option to purchase. If he did not assent to that interpretation of his proposal, it was his duty then to disclaim it. This he did not do, and it was not until October 25th that he wrote to the owners, informing them that the department had not extended or renewed the charter, nor approved the action of any officer of the department attempting to bind it for charter money beyond September 12.

We know of no reason why the parties to this charter party should not be bound by the ordinary rules which control contracts of private parties. In the correspondence the Department of Commerce and Labor was not represented by subordinates. It was represented by the Acting Secretary himself. He it was, according to the record,

who sent the proposal of the 12th, in which he asked for an answer, and we must assume that two days later he received the answer and was fully apprised of its contents.

But the ground upon which a party will be held to that meaning which he knows the other party has placed upon his proposal is equitable estoppel. It rests upon the fact that the other party, relying in good faith upon his silence or acquiescence, has been induced thereby to change his position for the worse, or has acquired some corresponding right, either of property, of contract or of remedy. The Alberto (C. C.) 24 Fed. 379; Pom. Eq. Jur. § 805. In the present case there is a total absence of showing that the plaintiffs did anything in reliance upon the silence of the Secretary or upon their understanding of the contract. On September 12, 1911, the steamer was in Oakland creek, and there it remained during the period of the extension of the option. There is no evidence that the plaintiffs would have chartered it or used it, or would have done otherwise with it than they did but for the option.

The judgment is affirmed.