## McCULLOUGH v. SATTERTHWAIT et al.

(Circuit Court of Appeals, Eighth Circuit. January 19, 1926.)

No. 6521.

1. **Appeal and error** ⊂⊃758(1)—**Merits considered notwithstanding absence of specifications of error in brief (Circuit Court of Appeals Rule 24).**

Merits of appeal considered, notwithstanding nonobservance of rule 24, requiring specifications of error in appellant's brief where all assignments of error raised single question of sufficiency of evidence to sustain findings of special master and court.

2. **Husband and wife** ⊂⊃25(3).

Husband's knowledge of facts pertinent to transaction, in which he acted within authority as wife's agent, was knowledge of wife.

3. **Corporations** ⊂⊃565(5)—**Findings that stock was transferred by corporation as part consideration for lease interest, and that repurchase by president was separate transaction, sustained.**

Evidence *held* to sustain findings that shares of stock were transferred by corporation as part of consideration for interest in oil lease, not as security for unpaid balance, and that repurchase thereof by president of corporation was separate transaction.

4. **Corporations** ⊂⊃408.

Officer of corporation cannot contract for purchase of its own stock by it without special authorization by board of directors.

5. **Estoppel** ⊂⊃90(6), 95—**Transferee of corporate stock held estopped by silence and acquiescence to deny receipt as part consideration for interest in oil lease.**

One receiving shares of stock from corporation, with knowledge of its understanding that they were transferred as part consideration for interest in oil lease, *held* estopped, by silence and acquiescence, to claim that they were put up as security for unpaid balance.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

In the matter of the receivership of the Gilliland Oil Company; John J. Satterthwait and another, receivers. From a decree disallowing the claim of Clara E. McCullough, claimant appeals. Affirmed.

See, also, 289 F. 75; 297 F. 494.

B. B. Blakeney and Hubert Ambrister, both of Oklahoma City, Okl., for appellant.

Hunter L. Johnson, of Tulsa, Okl. (J. H. Maxey, of Tulsa, Okl., on the brief), for appellees.

Before STONE, KENYON, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. This is an appeal from a disallowance of a claim in a receivership suit. The appellees were appointed temporary receivers of the Gilliland Oil Company on July 6, 1921, by the United States District Court for the District of Delaware, in a suit brought by a creditor and a stockholder against the company, a corporation of Delaware, for wrongful transfer of its property and diversion and dissipation of its assets. The appointment was made permanent on July 12th. An ancillary suit was commenced in the United States District Court for the Eastern District of Oklahoma, and on July 27th the same receivers were appointed by that court.

The appellant, asserting that she was a creditor of the Gilliland Company, filed a claim in the District Court of Delaware. Exceptions were filed thereto by the receivers. Upon petition by the receivers, the District Court of Delaware by its order directed that the claim should be litigated in the District Court for the Eastern District of Oklahoma on account of convenience of parties and witnesses; and the District Court for the last-named district by its order referred the matter to W. E. Utterback as special master.

The order appointing the special master stated that he was appointed "for the purpose of hearing and taking proof of said claim and the said exceptions thereto and making such findings and determinations both of law and fact with respect thereto as may to him seem proper, and reporting his findings and determinations to this court, * * * and after the filing of said report by said master, the claimant or exceptants may file exceptions to said master's report and findings on said claim or any part thereof to be disposed of by the court in due course. The evidence taken on said claim shall be reduced to writing and returned to this court by said master as a part of his report."

The proof of debt consisted of an affidavit by appellant, evidently made on a printed form. The affidavit stated that the amount of the claim was $42,000 with interest; that the debt was incurred as part of the consideration for the assignment of an interest owned by her in a lease of certain lands in Louisiana. Attached to the affidavit was the assignment of the lease by her to the company, the consideration being therein stated as $1 and other good and valuable considerations. The affidavit also stated: "This debt is also evidenced by letter from the Gilliland Oil Co., which is hereto attached, marked 'Exhibit B' and made a part hereof." Upon the trial before the

special master, both sides admitted that no such letter as Exhibit B was written. It may therefore be disregarded. The exceptions by the receivers to the claim consisted, so far as here material, of a denial of any indebtedness of the company to appellant; an admission of the assignment of the lease as evidenced by Exhibit A; and an averment that the total consideration agreed to be paid by the company to appellant had been paid. With the issues thus made up, evidence was offered at the hearing before the special master by the claimant and by the receivers.

The evidence establishes without dispute that the agreement for the purchase of the leasehold interest owned by appellant was an oral one made by Grant McCullough, husband of appellant, acting for her, and by J. W. Gilliland, president of the Gilliland Company, acting for it. It is further established by the evidence that the amount of the consideration agreed upon was $450,000, to be paid in part as follows: $100,000 in cash; $250,000 as a credit on the books of the company, to bear interest at 6 per cent. There is no question that this part of the consideration was paid. The dispute between the parties centers around the remaining $100,000. Appellant contends that 2,500 shares of the company's stock was put up with her husband to be held by him for six months as security for the $100,000, and that then the stock was to be taken up by the company and the $100,000 paid by it. Appellees contend that the 2,500 shares of stock were transferred by the company to appellant in payment of the $100,000; and that any agreement to take up the stock later, made by J. W. Gilliland and the husband of appellant, was merely one that J. W. Gilliland personally would take it up and pay $100,000; that the company did not know of any such agreement and had no interest in it.

The special master found:

"That claimant transferred the lease, as alleged, or her interest therein, to the Gilliland Oil Company on February 12, 1920; the Gilliland Oil Company on said date agreed to pay to claimant for said lease the sum of $450,000; and that on the following day, to wit, February 13, 1920, confirmed the oral purchase by a letter, in which the company advised the claimant that the price they were to pay her for the property was as follows:

" 'Cash, $100,000.00. (This amount was paid to you under date of February 9, 1920.)

" 'Amount placed to your credit on the books of the Gilliland Oil Company, same to bear interest at 6 per cent. from February 12, 1920, $250,000.00.

" '2,500 shares of Gilliland Oil Company common stock.'

"That thereafter, on the 24th day of April, 1920, at a special meeting of the board of directors of the Gilliland Oil Company, this purchase from claimant of this property at the above price was submitted to the board of directors and by them approved; that the officers of said company carried out the terms of said purchase by paying to claimant on April 26, 1920, two checks, each for $100,000.00; and on August 15, 1920, by paying to claimant one check for $53,-908.33, and by delivering to claimant 2,500 shares of the common stock of the Gilliland Oil Company, the exact date of the delivery of this stock to the claimant not being shown; that said stock was regularly issued and the certificates delivered to the agent of the claimant; and that these payments, together with the $100,000 paid February 9, 1920, constituted and was full payment of the purchase price as agreed upon by the Gilliland Oil Company, and paid in full the claim of Mrs. Clara E. McCullough.

"I further find the facts to be that later John W. Gilliland bought the stock from Mrs. McCullough, but that that transaction had nothing to do with the purchase of the oil and gas lease, and the payment for same, but was a separate and distinct transaction.

"It is therefore recommended that this claim be not allowed, but denied in full."

Exceptions were taken to the report and findings of the special master by appellant, on the broad ground that they were not supported by the evidence. The court overruled the exceptions and confirmed the report, disallowing the claim. Appeal has brought the case here.

[1] Attention is called by appellees to the failure of appellant to observe rule 24 of this court, requiring specifications of error in appellant's brief. The omission is disapproved, but inasmuch as all of the assignments of error raise in one form or another the single question of the sufficiency of the evidence to sustain the findings of the special master and the court below, we have concluded to consider the merits of the appeal and to overlook the nonobservance of the rule.

The vital question in the case is: Did appellant receive the 2,500 shares of the company's stock as part payment for the lease, or simply as collateral to secure $100,000 of the consideration with a promise that it would be taken up by the company within

six months. Another question may also be involved: If the evidence shows that the stock was taken as collateral and not as payment, whether a novation was thereafter made by the several parties, including J. W. Gilliland.

The evidence shows without dispute that very shortly after the oral agreement was made, a letter marked "Receiver's Exhibit A" was written and sent by the company to Mr. McCullough. That letter is as follows:

"(Copy.)               February 13, 1920.

"Mrs. Clara E. McCullough, 1424 South Boulder, Tulsa, Oklahoma—Dear Madam: Referring to our meeting with you yesterday, we beg to confirm the purchase from you of your quarter interest in a certain oil, gas and mineral lease executed by Judge J. C. Pugh, under date of September 23, 1918, of Caddo parish, Louisiana, in favor of J. B. Greer, covering certain lands in Red River parish, state of Louisiana, which is fully described in said lease.

"The price paid you for this property is as follows:

"Cash, $100,000.00. (This amount was paid to you under date of February 9, 1920.)

"Amount placed to your credit on the books of the Gilliland Oil Company, same to bear interest at 6 per cent. from February 12, 1920, $250,000.00.

"2,500 shares of Gilliland Oil Company common stock.

"We shall be obliged if you will be good enough to acknowledge this letter.

"Yours very truly,
                "Gilliland Oil Company,
"RCB:W.               By ————."

Grant McCullough, husband of appellant, testified that he made the oral agreement with J. W. Gilliland for the sale of his wife's interest in the lease; that the consideration was $450,000—$100,000 in cash, $200,000 April 26th, $50,000 to be paid when demanded, and 2,500 shares of the company's stock to be carried by him (Grant McCullough), but to be taken up by the company within six months at $40 per share, thus making up the remaining $100,000. He testified further that J. W. Gilliland came to him about six months later and said that he was ready to take up the stock; that Gilliland paid $25,000 by check and gave a note for the balance; that the stock was thereupon surrendered to Gilliland; that later Gilliland made other payments, and finally gave a note for the balance of $40,000. The notes were executed by J. W. Gilliland personally. The

11 F.(2d)—8

stock had been issued from the treasury of the oil company in the name of appellant. Grant McCullough also admitted that a short time after the oral agreement was made he learned from J. W. Gilliland that on the minutes of the corporation it appeared that the consideration paid for appellant's interest in the lease was $100,000 cash, $250,000 credit on the books of the company, and 2,500 shares of the company's stock; and Grant McCullough also admitted that he received Exhibit A, the letter above set forth. He further testified that when J. W. Gilliland took up the shares of stock and made the payment and gave his note, there was no agreement that the company should be in any way released.

P. J. Hurley testified that he was a director in the oil company; that he never knew of any agreement by the company to buy back the stock from appellant, or to redeem it; that the minutes of the board of directors of the company showed no such agreement; that the transaction as set forth in the minutes of the company showed as part of the consideration 2,500 shares of the company's stock; that this was told to Grant McCullough; and that so far as he (the witness) knew, Grant McCullough never denied that the consideration was as stated in the minutes of the corporation.

J. W. Gilliland testified that he made the oral agreement with Grant McCullough, acting as agent for his wife, and that he (Gilliland) agreed with McCullough to buy back the stock himself at the price of $40 per share within six months; that he did this because appellant objected to taking the stock as part consideration, but wished cash instead. Gilliland further testified that he afterwards did buy back the stock, paying $60,000 by checks on his personal funds, and giving his own personal note for the balance; that the note for $40,000 was still unpaid. He further testified that it was his opinion at the time of the transaction that the company could not buy back its own stock. Gilliland, however, admitted that the conversation between himself and Grant McCullough, which embodied the oral agreement, might have been worded in such an indefinite way that McCullough might have received the idea that it was the company that was to buy back the stock and not Gilliland personally. Gilliland also testified that at the time he took back the stock and made payments and gave his note, there was nothing said about releasing the company from any liability which existed against it.

[2] By this evidence it seems to be estab-

lished: First, that McCullough knew the contents of the letter from the company dated February 13, 1920, which set forth clearly what the company understood the transaction was; second, that he knew of the entries on the books of the company setting forth the transaction as the company understood it to be; third, that he knew when he turned back the stock to Gilliland that he was taking Gilliland's personal note and receiving Gilliland's personal checks for this retransfer of the stock. All of this knowledge on the part of McCullough was knowledge on the part of his wife, since he was her agent; since there is nothing in the record to show, and no claim made, that he acted outside of his authority; and since all of the knowledge above mentioned was pertinent to the transaction in which his wife was the principal. 2 C. J. 859–863; Curtis Co. v. United States, 43 S. Ct. 570, 262 U. S. 215, 222, 67 L. Ed. 956; Hovey v. Blanchard, 13 N. H. 145; Trentor v. Pothen, 49 N. W. 129, 46 Minn. 298, 24 Am. St. Rep. 225.

[3] Yet, with all of this knowledge, McCullough made no protest, nor did he say anything that indicated that he had a different understanding from that of the company as to the terms of the transaction. This knowledge on his part and this acquiescence would seem to be fairly good proof that his understanding at the time of the transaction and for a long period thereafter was the same as that of the company.

Further proof that Gilliland personally bought back the stock is found in the fact that it never went back into the treasury of the company, but was disposed of by Gilliland as his own; and there is no claim that Gilliland was defrauding the company. Furthermore, it is not shown that the company received any benefit from the giving of the note by Gilliland and from the payments made by him to McCullough at the time of the retransfer of the stock; and McCullough, as treasurer of the oil company, must have known of these facts also.

The actions of the company, the actions of Gilliland, the knowledge of McCullough of the attitude of the company and of its understanding in reference to the transaction, and McCullough's failure to protest or to do any act to indicate that his understanding of the transaction was different from that of the company, all lead to the conclusions: (1) That the special master and the court below were right in finding that the 2,500 shares of stock were transferred by the company as part of the consideration of the contract and in accordance with its terms; (2) that the buying back of the stock by Gilliland was a separate transaction between him and appellant.

[4] There are further reasons why appellant's contention that there was an agreement by the Gilliland Company to repurchase the stock cannot prevail. Even if J. W. Gilliland intended to make such an agreement for the company, there is no showing that he was authorized to do so. An officer of a corporation has no power to make a contract for a purchase by the corporation of its own stock without special authorization by the board of directors. Calteaux v. Mueller, 78 N. W. 1082, 102 Wis. 525; Beach v. Palisade, etc., Co., 90 A. 1118, 86 N. J. Law, 238; Farmers' Union Merc. Co. v. Ricketts, 195 S. W. 381, 129 Ark. 177; West Tex. Co. v. Dunivan (Tex. Civ. App.) 198 S. W. 163. No such authorization was shown in the case at bar.

[5] Finally, in view of the facts above stated, appellant was estopped from claiming that the contract was other than as understood by the Gilliland Company, by her silence and acquiescence while having full knowledge of the understanding of the company. Morgan v. Railroad Co., 96 U. S. 716, 24 L. Ed. 743; J. Homer Fritch, Inc., v. United States, 234 F. 608, 148 C. C. A. 374 (reversed on other grounds 39 S. Ct. 158, 248 U. S. 458, 63 L. Ed. 359); Mo. Dist. Tel. Co. v. Morris & Co., 243 F. 481, 490, 156 C. C. A. 179 (C. C. A. 8); Miami Cycle & Mfg. Co. v. Allen, 257 F. 556, 168 C. C. A. 540; Hertzel v. Weber, 283 F. 921 (C. C. A. 8); Letta v. Cincinnati Iron & Steel Co. (C. C. A.) 285 F. 707; George Tritch Hardware Co. v. Donovon, 221 P. 881, 74 Colo. 350.

The result is that appellant had no valid claim against the company, and her alleged claim was rightfully dismissed.

The decree is affirmed.