## LANE & BODLEY COMPANY v. TAYLOR.

### Opinion delivered October 22, 1906.

ACCOUNT STATED—CONCLUSIVENESS.—In a suit between an attorney and client in which one of points of controversy was as to the amount of the attorney's fee in a certain matter, it was error to submit to the jury the question of the amount of this fee to be determined upon a *quantum meruit* where the attorney had rendered an account which had been agreed to by the client; the rule being that an account stated may be reopened only for fraud or mistake.

Appeal from Clay Circuit Court; *Allen N. Hughes,* Judge; reversed.

*G. B. Oliver,* for appellant.

The court erred in giving the second instruction asked by the defendant. The question of the amount of the fee had been agreed upon and settled by correspondence. It had become an account stated. 1 Cyc. 370; 1 Am. & Eng. Enc. Law, 430. If appellee had made a mistake by reason of having misplaced his books and papers, that would not excuse his making a different charge from that agreed upon. Pomeroy's Eq. Jur. (1 Ed.), § 856.

*J. F. Gautney,* for appellee.

The evidence relied on by appellant to support its objection to the instruction numbered 2 asked by the defendant shows that there was never any agreement as to the fee, and other evidence shows that the amount stated was by mistake.

HILL, C. J. This case is a contest between an attorney and his client. The client was not satisfied with a statement of money collected and expenditures made, and refused to accept the

check sent to it, and this suit resulted. The amount of collections was admitted, and the difference grew out of the amount that should be allowed as credits.

Passing all other questions and going to the heart of the case, it is found that on January 27, 1903, the appellee, Taylor, the attorney, submitted to his client a statement and transmitted a draft for $342.10 as the balance due the client after paying various items and his fee, which were set forth in the statement. The fee charged was $200, and in regard to that the appellee said in his letter: "You will remember that there were four trials in the case, two in the circuit court, and two in the Supreme Court; and while the fee of $200 seems large, it is not, when the work done is taken into consideration. This does not include the two other trials, one in the circuit court at the outset of the litigation, and one some time after in the chancery court, making in all six trials. Hoping this will be satisfactory," etc.

In reply to this, the client (which was represented by home counsel who conducted the correspondence) wrote, refusing to accept the check for $342.10, and calling attention to the matters that had been overlooked, which are not material here, and asked that the account be recast, and in regard to the fee said: "We do not object to your fee, except that we think we are entitled to one-third of it. Please send us corrected statement," etc.

On February 13th the appellee wrote them, stating that he would look into some matters referred to in the letter not material to this issue, and said nothing in regard to the fee.

On February 26 he again wrote, remitting $393.50, having added $50.40 to his previous remittances for matters explained in the letter, and added. "There are some costs that I find that I paid, but I will let that go and count the matter even. All costs are paid."

On March 7, 1903, on learning that his check had been returned and the claim against him placed in the hands of an attorney for collection, he wrote a full history of the litigation which he had conducted, with circumstantiality and detail, which is apparently a correct and truthful history of the case. The gist of the letter was an insistence upon the correctness of the charge that he had made.

To this the appellant's attorneys replied on March 11, in

which they said: "We are in receipt of your favor of the 7th instant, and in answer beg to say that it is not a question of fees at all that compelled us to put the matter of Lane & Bodley Company *v.* J. W. Leonard in the hands of Mr. Oliver. On that point we refer you to our letter of January 29, 1903, but solely for the reason that you failed to send us money that you had collected, and when you did send check you did not send the correct amount," etc.                                                       ,

On March 25, 1903, the appellee wrote further in regard to costs and other matters, and concluded as follows: "I certainly think that I ought to have every cent of the fees that I have charged, and that you should take your charges out of the amount that I sent you, and then I will not have enough to pay my personal expenses in looking after the litigation, and besides I paid $150 of that to associate counsel."

Subsequent correspondence between the parties followed, no dispute or difference developed as to the fee, but the matter was not adjusted, and suit was brought. In said suit the defendant answered admitting the collection of the three items, towit: $129.60, $100 and $553.50, which were charged in the complaint to have been collected by him, and said that the same had been paid, and by way of cross-complaint he alleged that the appellant was indebted to him in the sum of $155 as attorney's fees and expenses in collecting said sums of money and the litigations concerning the matter.

On trial before a jury a verdict resulted in the sum of $5.00 in favor of appellee, and the appellants brought the case here.

The court sent the case to the jury upon instructions directing them to charge the appellee with the three items collected by him with interest (less a remittance of $79.60, and then credit him with the court costs paid by him, and also credit him with whatever fee he was entitled to for his services under the evidence, including expenses, and return a verdict for the party for the difference between the charges in whoseever side the difference stood.

Various other instructions were given, principally upon the question of amount of fee to be allowed the appellee, and upon that point the testimony of attorneys had been taken which presented a wide conflict as to the proper amount to be charged. It

was error to submit to the jury this question of the amount of fee to be found to be due upon a *quantum meruit,* because the correspondence which has been just detailed shows that that was a closed incident. It had become an account stated between appellant and appellee, and the appellee was only entitled to recover the $200 which he had charged, and which was agreed to by the attorneys conducting the correspondence on behalf of the appellant. They expressly disclaimed any difference with him over the amount of fee, and said that the reason they would not accept his check for $393.50 was on account of other items, and not on account of the fee which he had charged. After making this charge and remitting $393.50, which was not accepted but returned to the appellee, he then made a charge in this litigation for his services and expenses, which would more than absorb the collections made and leave due him $155, and sustained that charge by some evidence that the same would be reasonable for the services performed. But he was not at liberty to reopen this question and recover upon the *quantum meruit.* When an attorney makes a charge for services, and the same is accepted by the client, it becomes an account stated between them, and may be sued upon as such by him. *Wilcox* v. *Boothe,* 19 Ark. 684; *Pulliam* v. *Booth,* 21 Ark. 421. Necessarily, the converse is true, and the client's rights are likewise fixed. The rendition of an account is not of itself sufficient to make it an account stated; but where the other party goes over the account and assents to its correctness, then it becomes a settled matter. See this subject fully discussed in 1 Cyc. pp. 370-372. When it is thus settled. it can then only be reopened for fraud or mistake. *Roberts* v. *Totten,* 13 Ark. 609; *Lawrence* v. *Ellsworth,* 41 Ark. 502; *St. Louis, I. M. & S. Ry. Co.* v. *Camden Bank,* 47 Ark. 541; *Weed* v. *Dyer,* 53 Ark. 155; *Glasscock* v. *Rosengrant,* 55 Ark. 376.

The only uncertain element in this account was the fee; the other matters were mere ascertainment of the correct expenditures and costs to be charged against the collections, and were not matters open for contract or adjustment like the fee matter then stood.

But, even aside from the rules governing an account stated growing out of its rendition and acquiescence, and considering

this, not as an account, but as a negotiation between the parties, it is evident that a contract was consummated. Taylor offered upon his part to accept $200, which he then retained, in full for legal services growing out of the numerous law suits involved in the collection of the claim, and his client accepted that proposition. This ended the matter, so far as the fee was concerned, as both parties were capable of contracting in regard to the subject-matter, and did contract in regard to it, and there is no evidence authorizing the reopening of that contract upon the ground of fraud, undue advantage, mutual mistake or any other ground which sets aside a contract.

The court gave the jury the following instruction:

"2. If you find from the evidence that the defendant rendered a statement in which he charged a less sum for his services than he now asks, that does not prevent him from recovering whatever amount his services were worth. Or if you find that the defendant rendered his statement for services through mistake caused by reason of his books and papers being misplaced, and he could not find them, and did not remember about the cases sufficiently to fix the proper amount, then he is not necessarily bound by the statement that he made."

This instruction was improper, as it does not correctly state the law; and, even if it did, there was no evidence to justify the issue being presented to the jury. The correspondence at the time the fee was fixed and while the negotiation was pending about it showed an intimate knowledge of the services performed, and a recitation of those services to the client to satisfy him that the fee was reasonable. The testimony of Mr. Taylor does not state the extent and nature of his services any more definitely than his letters did at the time he was fixing this fee—merely gives more detail. It is true that he testifies that it was some two years from the time he got the money until he made his settlement, and that he had misplaced his docket and letters, and could not get the data necessary to make a statement, and says that he had forgotten about paying his associate counsel $150. One month after making the second remittance, and as a reason for assuring his client that the charge of the transmitting attorneys should not come out of the amount retained by him, he says that he would not have enough to pay his personal expenses in looking after

the litigation, and besides that he had paid $150 to associate counsel. At this time he did not ask that the matter be reopened on account of this oversight, and merely insists that for these reasons the charge that he had made was a proper one.

Doubtless, there were other matters as shown in his testimony that he was deprived of having the benefit of in his settlement by reason of his lost docket and correspondence and failing to remember details, but those matters did not go to the only matter subject to negotiation, the fee; they were matters that went merely to a proper accounting for the money received and proper credits in his own behalf, and they were subject to adjustment upon the ascertainment of those amounts at any time.

Other questions were discussed in the case in regard to the instructions, but it is not necessary to notice them; the view the court takes of the fee renders the others unimportant.

Objection was made to the bill of exceptions not showing all the testimony, but since that objection was made the bill of exceptions has been amended by the trial court, and the omitted matters have been inserted.

For the error in submitting to the jury the question of the fee the cause is reversed and remanded with directions to grant a new trial.