## FALCONE v. PARADISO.

### No. 5229 (Equity No. 45939).

Court of Appeals of District of Columbia.
Argued Nov. 10, 1931.
Decided Dec. 7, 1931.

Joseph T. Sherier, of Washington, D. C., for appellant.

Alfred Cerceo, J. Doxtater, F. G. Matson, A. B. Landa, and Frank S. Goodyear, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District overruling exceptions to the report of a special master and confirming the report.

The bill charged that the parties were engaged in the wholesale fruit and produce business in the District, and that during the period from May 1, 1926, to July 31, 1926, Falcone had collected and deposited in his own name in the Franklin National Bank the proceeds of the business in the amount of $2,000; and prayed for an order restraining the withdrawal of any part of that deposit, and for an accounting.

Defendant answered; admitted the partnership; denied that he had retained any part of the partnership fund; and attached to his answer a transcript showing the deposits in, and withdrawals from, his bank account for the period in question.

The cause was referred to a special master, with directions to state: (1) The purchase price of the fruit bought; (2) the income derived from the sale thereof; (3) the overhead expenses of the business; (4) the net profit to each partner; (5) the net loss to each partner; and (6) the respective rights of each partner in the business.

At the hearing before the master, the plaintiff testified that he went into business with the defendant at 913 Louisiana avenue in February, 1926. Under the partnership arrangement, plaintiff was to bear all expenses, and any profits derived from the business were to be divided equally, and losses borne in the same proportion. Plaintiff went to Baltimore daily, and during his absence defendant would transact the business for the partnership. Plaintiff was also in business on his own account at 913 Louisiana avenue. "During June and July the defendant gave the witness a portion of the money received by him. He could not state how much money he had received during that period from the defendant, and had no record to show the amount. * * * The defendant did not pay the witness all that was due him for April and May, but he did not know what the balance was or for which month it was due. * * * He did not know whether he had received other than $600.00 from the defendant during June and July." Plaintiff offered evidence showing purchases of fruit made by him during June and July amounting to $9,068.74. He admitted that he purchased fruit for three parties other than the firm. "He could not state the amount of fruit purchased by him for any of the parties named. All of the fruit purchased was charged to the plaintiff, who paid for the same out of his own funds. The fruit pur-

chased for the several individuals was not segregated but was all charged to the plaintiff, who paid for the same with the checks heretofore offered in evidence. He could not state how much he paid for fruit bought for any of the individuals above mentioned, nor did he know how much the fruit for himself or the defendant during the period involved had cost."

Plaintiff further testified that he had an accounting with the defendant in July, 1926, "at which time they attempted to figure out the profits and losses." Rocco Ruggieri was present and doing the writing for the parties. Plaintiff gave Ruggieri no figures at the time of the accounting, nor did he have at the time checks given by him in payment of the fruit purchased. He had given Ruggieri certain writings made upon deposit slips of the Franklin National Bank aggregating $3,270.-15. These so-called deposit slips were introduced in evidence. "The defendant stated to the witness he would pay his part of any losses. He made this statement more than once." Plaintiff received no slips from the defendant for the months of April and May, 1926. "He did not ask for any and made no complaint to the defendant for not giving him slips, and does not know why he did not complain. * * * He did not know how much cash he received from Falcone during the period of the partnership for which he got no slip, and has no record to show how much cash was paid to him by the defendant. Defendant did give him money, but he does not know whether it was enough or not; he can not tell the amount."

Ruggieri testified that when he made up the account he had no information or figures other than the so-called deposit slips. "The slips were all that he had to make up the account from. Nobody told him of any other payments but those shown on the deposit slips." Ruggieri did not testify that the defendant promised to pay plaintiff the aggregate of the deposit slips, or any other amount.

Plaintiff also introduced in evidence a transcript of defendant's account in the Franklin National Bank, which showed that during June and July, 1926, defendant deposited about $1,400, which included the $600 admittedly paid plaintiff. Defendant's bank balance on June 1st was a little less than $700, and on July 31st amounted to about $900. There was no evidence that he had any other account.

A witness for plaintiff testified that during June and July he visited the place of business of the parties three or four times a week. The defendant was there all the time, and the witness bought his fruit from him. Witness sometimes paid the defendant and sometimes the plaintiff for the fruit he bought.

Defendant testified that he did not collect $2,000 from the sale of fruit and deposit it in his personal bank account; never put any money derived from the sale of partnership fruit in his personal account, except on one occasion when the plaintiff had some trouble with one of his trucks and did not come home. On plaintiff's return, witness gave plaintiff his check for $600, being the amount collected. During the partnership, "the plaintiff had sold fruit belonging to the partnership, had put the money in his pocket and never gave the defendant an account of what he was doing. * * * The witness paid the plaintiff any number of times when he did not give him slips. Lots of times the witness would go to the bank and deposit the money in plaintiff's account. Paradiso gave him no record of such deposits." He gave the plaintiff the deposit slips because plaintiff asked him to "make the slip, the money you give me and then at the end of the week we figure on the month, and then we know how much money we have." Every time he gave plaintiff money, he turned over to plaintiff one of the slips so he could remember the amount. On cross-examination he stated that he would make out a slip when there was a delivery; if there was no delivery, he would put the money in his pocket, and, after an amount of $100 had been received, he would give it to the plaintiff. When he gave plaintiff no money, he did not make a slip. "The slip was given as a remembrance of the amount of money paid. The money was not deposited in his account, but was given to Paradiso. Four of the deposit slips did not have written upon them the number of witness's account."

Plaintiff, testifying on rebuttal, did not deny that he had sold fruit for the partnership and put the money in his pocket; nor did he deny that defendant had deposited in plaintiff's account receipts from partnership sales. He did testify that, when the alleged accounting was had, defendant stated that he would pay the loss. On cross-examination he was asked the amount of the loss, "and answered that he did not know."

The master found that "no records are available showing the state of the accounts of the parties for April and May, 1926, and the partnership ended as of July 31, 1926, so

that since July 31, 1926, there is no account to be stated." He further found that plaintiff during June and July, 1926, had purchased fruit for the partnership of the value of $9,068.74; that defendant had collected $3,270.15, the aggregate amount of the so-called deposit slips; and that "this money was not paid to the plaintiff by the defendant. The loss to each partner, therefore, is as follows: Loss to the plaintiff, $1,635.08; loss to the defendant, $1,635.07."

To this report, defendant filed two exceptions: First, that the master's finding as to the amount of fruit purchased for the partnership was in conflict with the evidence; and, second, that there was no evidence justifying the finding that the partnership had sustained a loss of $3,270.15. The exceptions were overruled, and a decree entered for plaintiff in harmony with the report.

 While it is the rule that the findings of an auditor or special master will be sustained "unless it is shown that there has been an error in law or a conclusion of fact unwarranted by the evidence" (Weller v. Wolf, 60 App. D. C. 249, 50 F.(2d) 1014, 1016, and cases there cited), courts will not hesitate to set aside such findings if clearly in conflict with the evidence; in other words, if the record furnishes no basis therefor. Morimura v. Taback, 279 U. S. 24, 33, 49 S. Ct. 212, 73 L. Ed. 586.

 In the present case, the conclusions of the special master, in our view, are in conflict with the evidence, and amount to nothing more than conjecture. It is apparent that the parties were illiterate, and that no accounts were kept by either. Plaintiff bought the fruit for the partnership, and also bought fruit for several other parties. From the evidence, it is impossible to determine how much he paid for partnership fruit. It is equally impossible to determine the expenses or the actual income of the partnership, and there is no basis for the conclusion of the special master that the partnership suffered a loss of $3,270.15 or any other sum. Plaintiff admitted that he "has no record to show how much cash was paid to him by the defendant. Defendant did give him money, but he does not know whether it was enough or not; he cannot tell the amount"; and, yet, the master has found that there was a loss in a definite amount.

 As to the so-called account stated, little need be said. The most the record shows is that Ruggieri was given the so-called deposit slips and wrote down the amount they totaled. Plaintiff testifies that defendant thereupon stated that "he would pay his part of any losses." Defendant denies this, and it is significant that Ruggieri is silent as to what occurred. This falls far short of being an account stated. Such an account presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent, express or implied, to the correctness of the balance. Gordon v. Frazer, 13 App. D. C. 382; Chace v. Trafford, 116 Mass. 529, 17 Am. Rep. 171; Lane & Bodley Co. v. Taylor, 80 Ark. 469, 97 S. W. 441, 7 L. R. A. (N. S.) 924; Anding v. Levy, 57 Miss. 51, 34 Am. Rep. 435; Vanbebber v. Plunkett, 26 Or. 562, 38 P. 707, 27 L. R. A. 811; Shaw v. Lobe, 58 Wash. 219, 108 P. 450, 29 L. R. A. (N. S.) 333; 1 R. C. L. 211. In the present case, there was neither an adjustment of accounts between the parties nor an acknowledgment or admission of a certain sum due.

The decree must be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.