**James L. DIXON and Mrs. Jeane Dixon, trading as James L. Dixon & Company, Appellants,**

**v.**

**Elmer E. STILL and Grace E. Still, Appellees.**

**Elmer E. STILL and Grace E. Still, Appellants,**

**v.**

**James L. DIXON and Mrs. Jeane Dixon, trading as James L. Dixon & Company, Appellees.**

**Nos. 1751, 1752.**

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 13, 1956.

Decided March 15, 1956.

Rehearing Denied in No. 1751 May 3, 1956.

Edward L. Foster, Washington, D. C., with whom Donald S. Caruthers, Washington, D. C., was on the brief, for appellants. in No. 1751 and for appellees in No. 1752.

Harold J. Nussbaum, Washington, D. C., with whom Nathan M. Lubar, Washington, D. C., was on the brief, for appellees in No. 1751 and for appellants in No. 1752.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Mr. and Mrs. Still sued the Dixons, real estate brokers, for $2,950 which they claimed was due them on the resale of certain real estate purchased earlier through the same defendants. Judgment was entered for plaintiffs for $1,500 and both parties have appealed.

The trial court made written findings of fact as follows. Defendants were real estate brokers acting for one Miller in the sale of his property in Takoma Park, Maryland. In the fall of 1954, plaintiffs, residents of West Virginia, signed a contract for its purchase through defendants' brokerage office for $21,000 and put up a $100 deposit. As later modified, the contract provided that plaintiffs were to assume a $15,000 first trust, execute a $4,000 second trust, and pay the $1,900 balance over the deposit at the time of settlement.

Prior to the settlement date plaintiffs objected to two items charged against them, one a title examination charge of $85 and the other, an $18 settlement fee. Defendants agreed to apportion these charges between themselves and the owners. In lieu of cash, defendants also agreed to accept plaintiffs' note for $298 in payment of advance taxes as required by the holders of the first trust.

The Millers then executed a deed of conveyance to plaintiffs and delivered it to the Potomac Title Company. Plaintiffs were not present for the settlement but instead executed the necessary documents at their home in West Virginia. They signed the settlement statement, assumed the first trust, executed the second, and delivered the instruments together with two checks totaling $1900 to defendants, who transmitted them to the title company.

Soon thereafter on January 4, 1955, plaintiffs, "for reasons better known to them but apparently based upon a change of mind due to the health of plaintiff's wife, * * *" notified defendants that they had "* * * decided to forfeit the $2,000.00 with the return of the * * * note." The note was returned and defendants replied by letter that they did not want plaintiffs to lose their $2,000 and that if plaintiffs executed the enclosed deed conveying the property to defendants (the Dixons), they would do their "* * * very best to save something out of the deal in [plaintiff's] behalf." Accordingly, plaintiffs executed the deed to the Dixons and by affidavit relinquished "* * * any right, title or interest * * *" in the purchase of the property. The Dixons advertised the property for resale and it was sold to a Paul Giang for $22,000.

The trial court found that plaintiffs had acquired title to the property from the Millers but that on defendants' agreement to salvage a portion of their $2,000, they were no longer interested in the property; that they were not concerned with the means defendants employed "in accomplishing the return of their money," and that the property was deeded to defendants at their request.

The court further found that though there was no evidence of fraud or misrepresentation, defendants had failed to make a proper accounting of their efforts to recoup plaintiffs' $2,000, and "* * * after considering all the evidence and exhibits relating to costs, expenses, taxes, interest, insurance, and payments incidental to the transfer of the property from the Millers to plaintiffs * * * and from plaintiffs to the defendant James Dixon * * * and from James Dixon to Paul Giang * * *, and after deduction of the proper and reasonable costs and expenses chargeable to plaintiffs in the salvaging of their $2,000.00, * * *" he found defendants' efforts had resulted in the recovery of $1,500 for plaintiffs.

In his conclusions of law, the trial judge found that "* * * as a result of the method chosen by the defendant James Dixon to carry out his agreement * * * a resultant trust was created between the parties and it was the duty of the defendant James Dixon to make a full report and accounting."

*Defendants' Appeal.*

■ Defendants assign twenty-four errors, sixteen of which challenge findings of fact. From the many exhibits and the lengthy transcript and depositions contained in the record we find there is substantial evidence to support the trial judge's findings, except in two respects.

It is true that the original contract between plaintiffs and Millers was modified not only by the increase of the first trust to $15,000, but also, since the sales price remained the same, by a corresponding reduction in the cash payment to $2,000. It also seems clear that an $85 charge in the settlement statement was for title examination, and not, as the trial judge found, for advance taxes. But a reading of his memorandum opinion as a whole indicates that the trial judge had a complete and full understanding of these facts, and did not improperly weigh them in arriving at his decision. We agree that a more explicit statement of the effect of the modification on the terms of the contract, and a more exact labeling of the expense item would have been desirable. But we are satisfied that the treatment of the matter did not prejudice defendants and left the legal correctness of the ultimate decision unaffected.

We turn to an examination of the conclusions of law. Defendants contend it was error to rule that title passed to the Stills, that plaintiffs' decision to forfeit was abandoned on defendants' offer to salvage, that the conveyance to defendants was to assist them in carrying out this agreement, and that the method chosen by defendants gave rise to a resultant trust with an attendant duty on defendants to account.

■ We think there is no question that legal title passed to plaintiffs on performance of their contract with the Millers. Defendants argue that the deed of conveyance, though formally executed, was neither recorded nor delivered and therefore was ineffective to pass title. They cite the Annotated Code of Maryland, 1951 Ed., Art. 21, §§ 1, 20, pp. 891, 902, which provides that a deed of real property is invalid for the purpose of passing title unless "* * * recorded as herein provided." But while this is true the Maryland courts, like most others, have held that between the original parties to a transaction recordation is not essential to the passage of title. See,

Eden Street Permanent Bldg. Ass'n No. 1 v. Lusby, 116 Md. 173, 81 A. 284.

Nor can we hold that there was a failure of delivery or, as defendants contend, that delivery was conditional. The trial judge did not so find and our study of the record does not yield such a result. While in transactions of this type, delivery is normally conditioned on the receipt of the purchase price in one form or another, plaintiffs did all they were required to do when they assumed the first trust, executed the second and paid the balance due. At that point both parties had signed settlement sheets, and an account stated had been reached.[1]

■■ Delivery of deeds of conveyance to title companies for examination and search is a customary practice in sales of real estate. Physical delivery of a deed to the purchaser is probably a rarity, and is by no means essential to a valid completion of the transaction. On the facts here existing, the judge properly held that plaintiffs had acquired legal title from the Millers, and had by their subsequent conveyance passed that title on to the Dixons.

■ Defendants' other contentions appear to be that plaintiffs, having elected to forfeit their cash payments, were precluded from later affirming the purchase and conveying title to defendants. One answer to this contention is that plaintiffs never had a true election to forfeit. Under the contract that election rested with the Millers, original vendors. Plaintiffs' letter of January 4, 1955, was at most an offer to abandon the purchase before taking possession, an expression of their willingness to submit to a forfeiture of their payment if the sellers so elected. A stronger answer is found in the judge's finding that there never was a forfeiture but instead a new agreement based on defendants' offer to recover for the Stills as much of their down payment as possible if the Stills would convey the property to them. This was an en-

1. Falcone v. Paradiso, 60 App.D.C. 348, 54 F.2d 715; MacPherson v. Harding, 40 App.D.C. 404; Ahrens v. Broyhill, D.C.Mun.App., 117 A.2d 452.

tirely new and distinct contractual arrangement, supported by mutual considerations and benefits. Executory though it was when made, the new contract was accomplished according to plan, and presented the completed deal the parties had in mind.

■ Appellants challenge the judge's designation of the situation as a resulting trust. Their position seems to be supported by Maryland decisions.[2] But conceding that they are right, it does not follow that the judge's ultimate ruling was wrong. At worst he put the wrong label on the picture. There was no evidence that plaintiffs intended to make a gift of their land or money to defendants, and clearly the money never was defendants'. Nor did it belong to the Millers. On the contrary the amount realized was the fruit of a mutually understood course of action looking toward a restitution of plaintiffs' cash payment, after deducting proper expenses. It was these net proceeds to which the Stills became entitled.

Whether it be called a resulting trust or constructive trust, or by any other name, defendants were in possession of funds acquired at plaintiffs' detriment and expense.

In a final group of contentions, defendants question the trial court's computation of the amount awarded plaintiffs. They argue that the trial judge should have set out the method by which he arrived at the sum of $1,500, that it was error to deny defendants a commission on the resale, and that there were other expense items which should have been considered by the court.

■ It may be conceded that a more thorough itemization of the expenses involved would have been desirable, but no rule of law requires that such be done. The record is replete with various items of cost incurred by the parties at the different stages of the transactions. To arrive at any figure the trial judge of necessity had to consider the expenses claimed by the parties and exercise his best judgment in allowing some and disallowing others. We cannot say he committed error because he failed to spell out the formula he used in reaching his decision. It is fair and proper to say that if the case had been decided by a jury, the amount of their ultimate award would not be subject to the kind of challenge we have here. In the absence of a showing of error the same is to be said of the judge's award. In his memorandum opinion, the trial judge specifically stated that he considered all "* * * evidence and exhibits * * * relating to costs, expenses, taxes, interest, insurance, and payments incidental to the transfers of the property * * *," and this statement is reflected in the full discussion of the case in the judge's memorandum opinion.

■ Finally, defendants urge that they were entitled to a commission on the sale to Doctor Giang. But, to be entitled to a commission on that sale it would have to be shown that they were acting as plaintiffs' agent. There was no attempt to show such a relationship or that an additional commission was a contemplated part of their resale agreement. On the contrary, the Giang contract and settlement papers make it clear that the sale was made in defendants' own name and on their own behalf.

*Plaintiffs' Appeal.*

■ Plaintiffs say that the award should have been for a larger amount than $1,500. What we have said in answer to defendants' criticism of the amount disposes also of this point made by plaintiffs.

Plaintiffs' other contention is that they were entitled to make oral argument on their motion to assess the cost of depositions against defendants, and that it was an abuse of discretion to deny the motion. Their contention was that the taking of the depositions was made unnecessarily long and costly by defendants' dilatory tactics and for that reason should have been charged

---

2. Springer v. Springer, 144 Md. 465, 125 A. 162; Sands v. Church of Ascension, etc., 181 Md. 536, 30 A.2d 771; see also, 3 Scott on Trusts, §§ 404–404.2, pp. 2161–2165, and cases cited.

to defendants. We agree that it would have been better procedure for the trial judge to have heard plaintiffs' argument; but it is apparent from the record that he was aware of plaintiffs' contentions. In his memorandum opinion he expressly stated that consideration had been given plaintiffs' request. Municipal Court Rule 54(f) placed the matter in his discretion and there is nothing in the record to suggest that such discretion was abused.

Finding no errors affecting substantial rights of any party, we must order that the judgment below be

Affirmed.