Lawrence v. Ellsworth.

## LAWRENCE v. ELLSWORTH.

ACCOUNT STATED: *Account presented and assented to.*

Where parties have had mutual dealings and one renders to the other a statement purporting to set forth all the items of indebtedness on the one side and of credit on the other, the account so rendered, if not objected to in a reasonable time, becomes an account stated, and cannot afterwards be impeached except for fraud or mistake.

APPEAL from *Garland* circuit court in chancery.

Hon. J. M. SMITH, Circuit Judge.

*John M. Harrell,* for appellant.

1. A *stated account* depends upon the circumstance of the case *(1 Story Eq.,* sec. *526* ), and only exists where the accounts have been examined and the balance *admitted* as the true balance, without having been paid. *2 Story Eq. Pl.,* sec. *798* ; *7 Paige, 573.*

2. When a plea of limitation is traversed, the *burden of proof* is on plaintiff to show both a cause of action and suing out of process within the period limited. *27 Ark., 343.* The bar of the statute is absolute in a court of equity as in a court of law. *2 A. K. Marshall (Ky.), 145* ; *12 Am. Dec., 367-370.* Under *sec. 4,134, Gantt's Dig.,* an acknowledgment to revive a debt must be unqualified and unconditional as *a debt due at the time,* or it

must be an express promise to pay it, etc. *26 Ark., 540;
17 Am. Dec., 175.* Part payment after the bar attaches
is not such evidence of payment as will revive a debt on an
open account. *33 Ark., 657; 116 Mass., 17.* Argues
that there was no mutual account or account stated between
the parties; that all the items were *on one side* down to May
8, 1876, the date of the last item in exhibit C, and accrued
more than three years before suit, etc., etc.; that only an
isolated portion of appellant's letter was attached to appel-
lee's deposition when the whole should have been. *Whart.
on Evidence, secs. 617, 620.*

*Clark & Williams,* also for appellant.

*G. W. Murphy,* for appellee.

1. The carrying of the balance of an account stated into
another and subsequent account stated, places the entire
sum in a condition to be protected by part payment from
the bar of limitation.

2. The letter of appellant is a written recognition of the
correctness of the account and his failure to object to
the credits are admission that they were properly made.
*22 Ark., 291.*

3. The transactions constitute mutual accounts current,
against which limitation runs only from the date of the last
item. *13 N. Y., 80; 48 Vt., 52.*

4. Part payment is sufficient to protect the entire
demand.

SMITH, J. Ellsworth brought an action at law against
Lawrence for moneys lent, advanced and paid out to his
use, for board and lodging, for the rent of rooms and for a
balance alleged to be due on partnership transactions. The
defences were the statute of limitations and a specific denial
of indebtedness, either on individual or partnership account,

coupled with an averment in general terms that, upon a fair settlement of the business of the partnership, the plaintiff would be found indebted to .the defendant. And upon a suggestion by the defendant that the controversy involved an examination of long and complicated accounts, part of them growing out of an unsettled partnership, the cause was transferred to equity. And it was referred to a master to take and state an account between the parties.

At the next term of court, the plaintiff having taken proofs tending to establish his case, and the defendant having produced little or no testimony to the contrary, the master reported a balance of $2,633.69 in favor of the plain-tiff. To this report the defendant filed exceptions, pending which he took his depositions; so that the cause was finally heard as well upon the merits as upon the particular exceptions. The master's report was set aside and without a further reference and without restating the account itself, the court gave the plaintiff judgment for the lump sum of $1,000. Both parties have appealed.

The individual account had its inception as far back as the month of November, 1872. On the seventh of April, 1873, the plaintiff rendered to the defendant a bill for the rent of office and living rooms, and for board of himself and family. This showed items of debit of $536 and credits to the amount of $400.80, leaving a balance of $135.20. The next bill, also for rent and board, was rendered September 7, 1874. It shows an indebtedness to date of $1,233.70, which includes the above-mentioned balance, with credits of $922.50, leaving $311.20 due Ellsworth. On the first of January, 1877, the plaintiff rendered a third bill, which starts out with the previous balance, shows a total indebtedness of $1882.92, less credits to be applied of $501.42, leaving a balance of $1,381.50 in Ellsworth's favor.

In May or June of 1878, the plaintiff presented to the

defendant a bill of $425 for rent of rooms from January 1, 1877, to March 5, 1878, being at the rate of $30 per month. Between April 1, 1877, and March 21, 1879, the defendant paid to the plaintiff in money, drafts and property $1,531. So upon this individual account there is only a balance of $275.50 due Ellsworth. No objection was made to any of these bills when rendered, nor indeed at all, until after the commencement of this suit.

The partnership account arose in this wise: On the twenty-second of May, 1876, plaintiff, defendant and one Fox entered into written articles of partnership for the practice of medicine and surgery at Hot Springs. This partnership was formed at the special instance and request of Dr. Lawrence, who had been appointed a commissioner at the Centennial Exposition, and who expected to be in Philadelphia for a great part of that year. One of the principal objects in its formation was to conserve the large and lucrative practice which he enjoyed. Each partner was to share equally in the profit and expenses, whether he was in the city or absent. Ellsworth was made secretary and treasurer of the firm. At the end of each month the other partners were to report to him the number of patients treated and the amount of moneys received and expended; and monthly settlements were to be made.

Lawrence was absent from the first of June to the beginning of December, 1876. During this time no reports were made to or by him. However, he was liberally supplied with money by the firm. Ellsworth and Fox exchanged reports regularly. And on the first of February, 1877, an accounting was had, and a settlement of partnership matters to that date.

By this it appeared that the defendant owed the plaintiff $1,302.13. No regular account books, as it appears, were kept, but the settlement was made from memoranda made by the plaintiff, and based upon the report of the partners.

58—R

themselves. And a copy of the settlement was furnished to each member of the firm.

The partnership continued until April 1, 1877, when it was dissolved by the voluntary retirement of Dr. Fox. A settlement was then had for the two preceding months, by which it was ascertained that the defendant owed the plaintiff $118.52, and also owed Fox $513.62, he having received and appropriated these amounts over and above his share of the partnership income. The plaintiff advanced the money to pay Fox.

The plaintiff and defendant then formed a new partnership, which ran until March 5, 1878, when a fire destroyed their office, books and papers. The defendant proposed, and the plaintiff assented to the proposal, that this partnership should be settled by each partner retaining what he had collected without accounting to the other. As, however, the firm had used and occupied as offices four furnished rooms belonging to Ellsworth, which are proved to have been worth $80 per month, the defendant is chargeable with one-half of their rental value, say $446.66.

The decree does not disclose the grounds of the court's dissatisfaction with the master's report, and we are utterly unable to perceive how it reached the conclusion that Lawrence owed Ellsworth the round sum of $1,000. Nevertheless, it should be affirmed, if approximately correct. Perhaps the court despaired of ever arriving at the precise state of the accounts, but being convinced that the defendant was indebted to the plaintiff, rendered a compromise decree, splitting the difference between the parties.

There is no question of limitation in the case. The action was brought January 22, 1880. Both partnerships terminated, and all the settlements were had less than three years before this. Upon the individual account, payments were made from time to time, the latest being of date March 21, 1879.

Where parties have had mutual dealings, and one renders to the other a statement, purporting to set forth all the items of indebtedness on the one side and of credit on the other, the account so rendered, if not objected to in a reasonable time, becomes an account stated, and cannot afterwards be impeached, except for fraud or mistake. —*Oil Co. v. Van Etten, 107 U. S., 325, and cases there cited.*

*ACCOUNT STATED: Statement presented and assented to.*

Here no fraud or mistake is shown, nor even errors or omissions of credit. Lawrence, both in his answer and deposition, denies somewhat vehemently that the accounts of the firm of Lawrence, Ellsworth & Fox were properly adjusted. But they have been once deliberately settled by the parties themselves at a time when they were of recent occurrence and fresh in their recollection. And it requires something more than bare assertions or vague suspicions of having been overreached to overturn such settlements. Dr. Fox, who is shown by the record to have been a man of a fine sense of honor, and who evidently cherishes a warm regard for both of his former associates, testifies that the settlements were fairly, intelligently and correctly made from the written reports of the several partners, and that they were understood and accepted by all concerned as final.

Moreover, Lawrence's own conduct is totally irreconcilable with his present claim, that he owes Ellsworth nothing. For on the tenth of July, 1879, Ellsworth addressed to him, then at the Warm Springs in North Carolina, this letter :

" DEAR DOCTOR—I regret very much that you could not find time before leaving home to make full settlement with me of our accounts. It is a duty due both equally, and should not have been neglected. I gave you statement in full over one year ago, requesting then that you should look it over and make settlement as early as possible. Since then you have not paid me in money a single dollar. My

necessities and those of my little family demand and compel me to arrange our business matters without unnecessary delay, and this I am determined to do, it being justice to all interested. You were my debtor March 5, 1878, at the time of the fire, $2,920.12.''

He then mentions two small credits of grapevines since that time and offers to make liberal deductions to induce a speedy settlement. He alludes to the fraternal feeling which had always characterized their past relations and reproaches Lawrence for having enjoyed the use of money, to which the writer was entitled, for three years without interest. The letter concludes: ''I only ask what is right and just, and due from one man to another. There can be no excuse for not complying with my request. If you have any offsets that I have not covered in my statement, it will be my pleasure to consider them, and allow them, if correct.''

Lawrence's reply, written one week later, begins thus:—
''MY DEAR ELLSWORTH:—

I have your last letter. It is utterly impossible for me to accommodate you or anyone at this time.''

He does not say, ''You, Ellsworth, have no just demand against me,'' but excuses himself from paying, on account of his ''temporary impecunious state.'' This is decisive.

The master's report was substantially correct. It gave the defendant credit for twenty-five dollars rent collected of an occupant of one of the rooms while he was absent.

This, according to our restatement, reduces the indebtedness of Lawrence to $2,631.46.

The decree below is reversed, and a decree will be entered here for that amount.