BELL LUMBER COMPANY *v.* ALEWINE.

Opinion delivered March 10, 1924.

1. SALES—EVIDENCE.—In an action for the balance due on a sale of lumber, evidence *held* to establish a meeting of minds in making the contract, but to raise a question for the jury as to the price agreed upon.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict upon conflicting evidence is conclusive on appeal.

3. TRIAL—INSTRUCTION INVADING JURY'S PROVINCE.—In an action for the balance due for lumber sold under a contract requiring the buyer to deliver receipts to the haulers, which were to be turned over to the sawyer for the owner, an instruction that delivery of such receipts to the sawyer was equivalent to delivery to the owner, and that he was bound by information therein contained as to the price allowed, was properly denied, as the question, under the evidence, was for the jury.

4. ACCOUNT STATED—CONCLUSIVENESS.—An account rendered is not binding as an account stated unless both parties expressly or impliedly assent to its correctness.

5. ACCOUNT STATED—SUBMISSION TO PARTY.—An account stated must have been submitted either to the party sought to be bound, or to his duly authorized agent.

Appeal from Pope Circuit Court; *A. B. Priddy,* Judge; affirmed.

STATEMENT OF FACTS.

J. L. Alewine commenced this suit before a justice of the peace against the Bell Lumber Company, a partnership composed of C. Bell, O. C. Alewine and Reece Alewine, to recover the sum of $207.50, the balance alleged to be due for lumber sold by the plaintiff to the defendants. The defendants denied that they were indebted to the plaintiff in any sum whatever.

The plaintiff recovered judgment against the defendants in the justice of the peace court for the amount sued for, and the defendants appealed to the circuit court. In the circuit court the case was tried before a jury.

J. L. Alewine was the principal witness for himself. According to his testimony, he lived about three miles northeast of Atkins, in Pope County, Arkansas, and bought a tract of land near his farm, which it was estima-

ted could be sawed into between 75,000 and 100,000 feet of lumber. The Bell Lumber Company had a lumber yard at Atkins, Arkansas. J. L. Alewine made a contract with O. C. Alewine to sell the lumber cut from the timber in question to the Bell Lumber Company for $30 per thousand, "mill run." W. R. Taylor ran a sawmill near the land, and it was understood between the parties to this suit that Taylor should be hired to saw the timber into lumber. The lumber haulers were to be. given slips of paper showing the grade, price, and quantity of lumber delivered to the Bell Lumber Company. These slips were to be delivered by the lumber haulers to Taylor, and to be used by him and J. L. Alewine in settlement of the amount of lumber cut by Taylor for said Alewine. When 24,368 feet of lumber was delivered to the Bell Lumber Company, Reece Alewine gave J. L. Alewine a check for the purchase price thereof at the rate of $30 per thousand feet. On the 11th day of September, 1920, J. L. Alewine received another check in payment of 11,243 feet of lumber at $30 per thousand. On September 24, 1920, he received a check in payment for 8,558 feet of lumber at $30 per thousand. J. L. Alewine did not receive any further payments on account of the lumber, but the slips which were given to the haulers were turned over by them to Taylor. On the 5th day of November, 1920, all the logs had been hauled to Taylor's mill, and Mr. Taylor then showed J. L. Alewine one of the slips of paper which the haulers had delivered to him, and it showed that the Bell Lumber Company was only allowing the plaintiff $25 per thousand feet for the lumber. The plaintiff then went to see O. C. Alewine about the matter, and he told the plaintiff to go ahead and haul the rest·of the lumber, after it was sawed, and they would treat him right. The land from which the timber was taken cost the plaintiff $360. It cost him $24.50 per thousand feet to have the timber cut down, sawed into lumber and hauled to the mill of the defendants. After crediting the defendants with all payments at the rate of $30 per thousand feet for the lumber hauled, the defendants owed the plaintiff

$207.50. The testimony of the plaintiff was corroborated by that of his son.

O. C. Alewine was a witness for the defendants. According to his testimony, he worked with the machinery in their mill, and made no contract whatever with the plaintiff for buying his lumber. He only told the plaintiff the prices which the Bell Lumber Company paid for different kinds of lumber.

Reece Alewine was also a witness for the defendants. He admits giving the plaintiff checks for lumber at the rate of $30 per thousand feet in the amounts testified to by the plaintiff, but he says that he did this in reliance upon the statement of the plaintiff to the effect that C. Bell, one of the defendants, had agreed to pay him that price.

C. Bell was also a witness for the defendants. According to his testimony he did not agree to pay the plaintiff $30 per thousand feet for mill-run lumber. He agreed to pay $30 per thousand feet for common boxing, $35 per thousand feet for clear boxing and $25 per thousand feet for what is termed narrows and dimension lumber. These were the prices that the Bell Lumber Company paid other parties for lumber, and were the prices which they agreed to pay to the plaintiff for his lumber delivered at the mill. The understanding was that the lumber was to be cut at the sawmill of W. R. Taylor and then hauled to Atkins to the lumber yard of the defendants. The defendants would give the haulers slips of paper showing the grade, measurement and price of each load hauled to the mill, to be delivered by them to Taylor. These slips were to be used in the settlements between all the parties.

Taylor testified that he knew that the defendants were only allowing the plaintiff $25 per thousand feet for the lumber delivered, as shown by the slips, and stated that he did not tell the plaintiff about this until after all the logs had been hauled to his mill, which was on the 5th day of November, 1920. He said the reason he did not tell him sooner was because he wanted to saw the lumber for the plaintiff, and was afraid that, if he

told the plaintiff that the defendants were only allowing him $25 per thousand, he would quit cutting his timber and having it sawed. The plaintiff had told him before this that the defendants had agreed to pay him $30 per thousand feet, "mill run," for his lumber. Taylor further stated that he had agreed to take the grade and measurement of the lumber made by the defendants at their mill, and that it was understood that the slips showing this and the price of the lumber should be returned to him by the haulers, to be used by him in settling with the plaintiff. From a verdict and judgment in favor of the plaintiff for the amount sued for, the defendants have duly prosecuted an appeal to this court.

*E. A. Williams* and *Hays, Ward & Hays,* for appellant.

There was no valid contract, as there never was a meeting of the minds as to the amount to be paid for the lumber. 97 Ark. 613; 11 L. R. A. (N. S.) 254. The contract of sale was severable, as shown by the testimony, there being no stipulated amount of lumber to be sold. The contract was therefore void for want of mutuality. 102 Ark. 621; 88 Ark. 491; 76 Ark. 74. Each ticket was an account stated, and the delivery of such tickets to the agent of the appellee was a delivery to him, and notice as to the price allowed. 111 Ark. 443; 29 Ark. 99; 158 Ark. 119.

*Gordon & Combs* and *Robert Bailey,* for appellee.

HART, J., (after stating the facts). It is first insisted that the evidence is not sufficient to support the verdict. The contention in this respect is that the minds of the parties did not meet as to the price to be paid for the lumber. We cannot agree with counsel in this contention. According to the testimony of both the plaintiff and the defendants, there was a meeting of the minds of the parties as to the price to be paid for the lumber; but their testimony is in direct conflict as to what price the parties agreed upon.

On the one hand, the plaintiff testified that the defendants agreed to pay him $30 per thousand feet for mill-run lumber. On the other, the defendants testified that they agreed to pay him $30 per thousand feet for common boxing, $35 per thousand feet for clear boxing, and $25 per thousand feet for what they called dimension lumber. So it will be seen that the testimony on each side tends to show that a contract was made between the parties for the purchase of the lumber of the plaintiff, to be delivered at the yard of the defendants in Atkins, Arkansas; but their testimony is flatly contradictory as to the price to be paid for it. There is no dispute between the parties as to the grade and quantity of the lumber delivered. The dispute as to the price to be paid was settled by the jury in favor of the plaintiff, and the verdict is binding upon this court upon appeal. In this connection it may be stated that the court submitted the question of the price to be paid for the lumber to the jury in an appropriate instruction, to which no objection was made.

It is insisted, however, by counsel for the defendants that the court erred in refusing instruction No. 1 asked by the defendant. The court properly refused to give the instruction in the form asked by the defendant. The concluding part of the instruction reads as follows: "And you are further instructed that, if you find from the testimony that the defendant, Bell Lumber Company, acting under the directions of the plaintiff, delivered to the various drivers a ticket, showing quantity and quality of each load, and giving prices given for the various grades of lumber, and these tickets were delivered to Taylor under the plaintiff's directions, then you are instructed that the delivery to Taylor of these tickets was the same as if the tickets for the lumber had been delivered to the plaintiff, and the plaintiff is bound by the information in these tickets."

It will be noted that the instruction is peremptory in its nature. It tells the jury, as a matter of law, that, if the tickets given by the Bell Lumber Company to the

haulers, showing the quantity, grade and price of each load of lumber, were delivered to Taylor, then the delivery of the tickets to Taylor was the same as if they had been delivered to the plaintiff, and that the plaintiff is bound by the information contained in the tickets. This was error. The question of whether these tickets became an account stated, under all the evidence, was one for the jury, under proper instructions from the court. It was error to tell the jury, as a matter of law, that the plaintiff was bound by the information given by the tickets because he had consented to their delivery to Taylor. The rule is that a stated account is not binding as such unless both parties, either expressly or impliedly, assent to it as being correct. *Wimberley Grocer Co.* v. *Brandon-Craig & Co.,* 160 Ark. 527. In an account stated it is necessary that the statement of the account should be submitted to the party sought to be bound or to his duly authorized agent. *Charlesworth* v. *Whitlow,* 74 Ark. 277.

The jury might have found, from all the facts and circumstances introduced in evidence, that Taylor had authority from the plaintiff to receive the accounts and act for him, expressly or impliedly, in assenting to the correctness thereof. But, under the circumstances, it would have been error to have told the jury, as a matter of law, that the plaintiff was bound by the knowledge received by Taylor as to the price allowed him by the defendants for the lumber.

The jury might have inferred, from all the attending circumstances, that the slips of paper showing the grade, quantity and price of lumber were given to him to be used in the final settlement of all the parties with the plaintiff, and that the plaintiff might not examine them until after all the logs from the timber in question had been sawed into lumber and delivered to the defendants at their mill. Hence the jury might have found that it was not contemplated between the parties that the plaintiff should examine these slips until final settlement should be made of the whole matter. In this view of the

case it would have been erroneous to have told the jury that he was bound by the information which Taylor received upon the delivery of the slips to him.

It follows that the judgment must be affirmed.