McGEHEE v. CUNNINGHAM.

Opinion delivered March 3, 1930.

*Hardin & Barton,* for appellant.

*Cravens & Cravens,* for appellee.

SMITH, J. Appellee, plaintiff below, alleged as his cause of action against appellants, the breach of a written contract of employment, whereby he had been damaged in the sum of $1,200. The contract upon which suit was brought was preceded by a correspondence, which involved the exchange of a number of letters, and, while these letters cannot be considered for the purpose of altering or varying the terms of the written contract, they may be considered as showing the relative situations of the parties, and thus enable us to determine the meaning of the language employed by them in their written contract. *Inter-Southern Life Ins. Co.* v. *Shutt,* 175 Ark. 1161, 1 S. W. (2d) 801.

Appellee was a cotton buyer and classer, and was employed by appellants in that capacity to buy cotton for their account. One of the letters from appellants proposed a commission of fifty cents per bale, and expressed the opinion that a live man might buy as many as fifteen or twenty thousand bales of cotton in Oklahoma alone, and appellee's operations were not to be limited to that State. Appellee replied that he was a married man with two children, and that his family was dependent upon him for support, and he would require an all-year contract

at a guaranteed salary, payable monthly or semi-monthly, as well as the commission basis proposed by appellants.

The parties, having apparently come to terms through their correspondence, met to consummate the contract of employment, and after some discussion it was agreed that appellant should reduce the contract to writing, and appellee returned to his home in Oklahoma, and a few days later received the copies for his signature. The contract was signed, but it was agreed, in the correspondence relating thereto subsequent to its execution, that these letters, which slightly amended the contract, should be construed as a part of it.

The relevant and material portions of the written contract are as follows: It was agreed that appellee, who was designated as the party of the first part, should buy cotton for appellants, designated as the party of the second part, in the Oklahoma City market and vicinity, but should buy "only on limits, and under direction of the parties of the second part," and that, on all cotton bought and taken up by the party of the first part, he was to receive fifty cents per bale commission. There are certain provisions about the payment of telephone calls and telegrams, and other expenses, which need not be recited, and it was then provided as follows:

"Parties of the second part agree to advance to the party of the first part two hundred dollars ($200) per month during term of this contract—one hundred dollars ($100) of which is to be payable on the first of each month in advance, and one hundred dollars ($100) on the 15th, and to pay him balance commissions, if any, that have accrued at close of season. In addition to this advance of two hundred dollars per month, the parties of the second part agree to make further advances, if necessary, sufficient to cover telephone, telegraph and traveling expenses, whenever the party of the first part is going outside of the State of Oklahoma for the purpose of buying and/or taking up cotton; it being agreed and understood that such advances are only a loan to the party of

the first part, and are to be paid back to the parties of the second part at the end of the season or before, if possible. It is mutually agreed and understood that the parties of the second part guarantee that the party of the first part will buy forty-eight hundred (4,800) bales during the term of this contract.

"It is further agreed that in the event that either party is dissatisfied with this contract that they may terminate it by giving sixty days notice.

"Witness our hands this 14th day of July, 1928."

In the letter amending or supplementing this contract these provisions appear:

"It is mutually agreed between us, that on any cotton that we buy and you take up, you are to receive the full commission of fifty cents (50c) per bale, but on any cotton that you buy and call upon us to take up, you are to receive twenty-five cents (25c) per bale. The other 25 cents is to go to us for the purpose of paying the expenses and time of the man who we might be required to send. In this event, bales bought will be considered half bales in the guarantee of forty-eight hundred.

"Fourth Paragraph. When you are called upon to go outside of Oklahoma to take up cotton or buy cotton, the expenses of the trip will be advanced to you by us, and are to be paid back to us out of excess commissions that you receive above the forty-eight hundred bales, if you do not receive any commissions above the forty-eight hundred bales then this expense is to be borne by us."

On October 30th, appellants wrote appellee a letter, in which, after reciting the unsatisfactory condition of the cotton business, closed with the following statement: "Unless something turns up between now and the first of January, we are going to close up shop until another season. This will be sixty days' notice to you of cancellation of the contract. We hope that by the end of this time that, if you have not already secured employment, that matters will shape themselves so that we can go on."

In his reply to this letter, appellee expressed his surprise and his unwillingness to be dismissed, and requested a letter of recommendation, and received a reply thereto in which he was authorized to refer prospective employers to appellants, and was assured that, "We will say all that we can in your behalf, and nothing that will hurt you."

After writing the letter of October 30th, appellants remitted to appellee three checks, each for a hundred dollars, and, on December 8th, wrote a letter enclosing a check for a hundred dollars, in which it was stated that, "We are enclosing our check for $100, which pays your salary up to January first, which is the expiration of the sixty days' notice that we gave you. This completes our agreement with you." Upon receiving this letter appellee called appellants over the long distance telephone, but they declined to have any conversation with him. Appellee cashed the check, and at the expiration of the year brought this suit, and at the trial, from which this appeal comes, made proof of his inability to secure any other employment to minimize his damages. He had been paid $1,200. There was a verdict and judgment in his favor for the sum of $1,200, from which is this appeal.

The controlling instruction is one numbered 3, which was given over appellants' objection, and which reads as follows: "You are instructed that the contract in evidence, and supplement thereto, means that the plaintiff, under the terms was entitled to a minimum compensation thereunder of fifty cents a bale on forty-eight hundred bales of cotton; and the fact that the contract was terminated by the defendants did not deprive him of that right, and he would still be entitled to a minimum recovery of fifty cents a bale on forty-eight hundred bales of cotton, less the twelve hundred dollars which has been paid, unless precluded from doing so under other instructions."

We think this instruction correctly construed the contract. The correspondence between the parties makes

plain the fact that each was contracting with reference to the "cotton season," and the testimony shows that such contracts usually cover a year. It was contemplated that appellee might buy as much as fifteen or twenty thousand bales of cotton, and it was guaranteed that he should be given the opportunity during the year to buy as much as forty-eight hundred bales, and had he done so his commission would have been $2,400, which exactly pays the salary of $200 per month for a year. It is true the contract also provided that: "It is further agreed that in the event that either party is dissatisfied with this contract they may terminate it by giving sixty days' notice." This provision and the guaranty above referred to are apparently conflicting, and these provisions must be construed together to arrive at the intention of the parties when the contract was executed. It is also to be remembered that the contract was prepared by appellants, and it is a familiar rule of construction that for this reason it must be construed most strongly in appellee's favor, and, when so construed, we think the contract gave appellants the right to terminate the contract upon sixty days' notice, but that action would not discharge the guaranty. It remained, and furnished the basis upon which the minimum salary should be computed. Now, while the sixty days' notice of termination extinguished appellee's right to buy cotton in excess of the forty-eight hundred bales, as he might otherwise have done, he had the right under his guaranty to buy that amount of cotton, because it was this guaranty which furnished the consideration inducing appellee to enter into the contract. If appellants had the right at any time, for any reason satisfactory to themselves, to discharge appellee, the guaranty becomes meaningless and worthless, but, as appellants wrote the contract, the guaranty contained in it must be most strongly construed against them, and we, therefore, hold that, in the absence of a breach of the contract by appellee which justified its cancellation by appellants, the right to cancel was

subject to the guaranty, and its cancellation operated only to discharge appellants from any liability to pay commissions on any excess over forty-eight hundred bales—that number not having been bought when the notice of cancellation was given.

It is also insisted that the notice of cancellation, and the letter of December 8th enclosing the last check in payment of the sixty days' salary, constituted an accord and satisfaction, and that a verdict should have been directed in appellants' favor for this reason.

Upon this question the court gave at appellants' request an instruction numbered 4 which reads as follows: ''You are further instructed, gentlemen of the jury, that if you find from a preponderance of the evidence that the defendants on the 8th day of December, 1928, paid the plaintiff by check the sum of $100, and that they did so with the expressed intention that this was settlement in full with the plaintiff, and so advised the plaintiff at the time, and that the plaintiff accepted said check with knowledge that it was thus intended, then you are told that the plaintiff could not recover further in this case.''

It is insisted that the jury disregarded this instruction and, further, that a verdict should have been directed in appellants' favor for the reason that the undisputed facts show that there was an accord and satisfaction.

We do not agree with counsel in this contention. Appellee denied that he had received the check in satisfaction of his demands under the contract. On the contrary, he contends that there was no controversy about the sum paid him. This was a liquidated demand payable in any event, and there was no controversy about the indebtedness which the last check paid. This check paid the salary up to January 1, 1928, and there was no controversy about it. The controversy was over the salary accruing thereafter, and nothing was paid on that account. The payment was upon an undisputed item, which was payable in any and at all events, and we think

the court was correct in refusing to hold, as a matter of law, that there had been an accord and satisfaction, and instruction numbered 4, set out above, was as favorable as appellants were entitled to have given on this subject. *Johnson* v. *Aylor,* 129 Ark. 82, 195 S. W. 4; *Feldman* v. *Fox,* 112 Ark. 223, 164 S. W. 766.

Appellants offered testimony tending to show that appellee had purchased cotton for their account which "fell short of the grades and staples for which they were bought by the plaintiff," and the action of the court in refusing to admit this testimony is assigned as error.

There was no error in refusing to admit this testimony, as the answer sets up no such defense, and no offer was made to so amend the answer as to present that question. The notice discharging appellee assigned no such reason, and the letter of recommendation hereinabove referred to contained no intimation that such a contention would be made. The injection of this question into the case after the plaintiff had put on his testimony raised an issue which appellee had no reason to suppose he would be called upon to meet. The pleadings presented no such issue, and there was no offer to so amend them as to raise it, and the testimony was properly excluded on that account. Under the circumstances stated we think there was no abuse of discretion calling for the reversal of the judgment, had the court refused to permit the answer to be amended to raise this question had a request been made for permission to amend. *Butler* v. *Butler,* 176 Ark. 126, 2 S. W. (2d) 63.

Certain other questions are raised which we find it unnecessary to discuss, and, as no error appears, the judgment must be affirmed, and it is so ordered.