### NELSON et al. v. CHICAGO MILL & LUMBER CORPORATION.

No. 9920.

Circuit Court of Appeals, Eighth Circuit.

March 6, 1935.

Ozero C. Brewer and George K. Cracraft, both of Helena, Ark., for appellants.

John I. Moore, of Helena, Ark., J. B. Daggett and C. E. Daggett, both of Marianna, Ark., and J. G. Burke and John I. Moore, Jr., both of Helena, Ark., for appellee.

Before BOOTH, Circuit Judge, and MUNGER and BELL, District Judges.

BELL, District Judge.

This is an action for damages for breach of a contract. At the close of appellants' testimony the court directed a verdict for the appellee. As in the court below, the appellants will be referred to as plaintiffs and the appellee as the defendant.

The plaintiffs owned a tract of land bearing merchantable timber in Lee county, Ark.; and on August 25, 1926, entered into a contract with the Chicago Mill & Lumber Company to sell all the timber on the land estimated at approximately 20,000,000 feet to the company at a schedule of prices designated in the contract. They were required under the contract to deliver to the company, at places selected by it, 1,000,000 feet of timber per month subject to adverse logging conditions, over which the plaintiffs had no control.

At the time the contract was made plaintiffs were indebted to the company in the sum of $43,760 and to a bank at Helena, Ark., in the sum of $9,000. It was agreed that as the timber was delivered the proceeds should be applied to the liquidation of these debts, including 6 per cent. interest on the indebtedness due the company. The contract contained a provision that balances due the plaintiffs likewise should bear interest. This provision referred to as the reciprocal interest clause is as follows: "All retentions in your hands shall bear a reciprocal rate of interest after the next succeeding settlement date until the same are applied as actual credits upon our indebtedness to you, or paid to us, as the case may be."

The plaintiffs in September, 1926, commenced cutting and delivering timber to the company and continued operations until May, 1931, during which time they delivered a total of approximately 11,200,000 feet. Obviously, they did not deliver 1,000,000 feet per month as provided by the contract. According to the testimony this was due to adverse logging conditions over which the plaintiffs had no control, and because the defendant at no time objected to the quantity that was being delivered.

In October, 1928, defendant was incorporated and it acquired the assets, liabilities, and business of the Chicago Mill & Lumber Company including the contract involved. The defendant denies that it became liable on the contract, but it took over the business of the contracting company, received the timber as delivered by the plaintiffs over a period of about three years, made payments thereon; and there was substantial evidence to support a finding that it did become liable on the contract.

In March, 1927, the St. Francis Levee Board commenced a suit against the plaintiffs challenging their ownership of the timber and their title to the land. This suit was terminated in August, 1932, in favor of the plaintiffs in this case. Notwithstanding that suit, the plaintiffs continued to cut and deliver timber to the defendant until May, 1931, and the defendant applied the proceeds therefrom on the above-mentioned indebtedness until in 1929 when it was liquidated. Thereafter the defendant held the proceeds of the timber on the ground that title thereto was involved in the suit.

In September, 1931, the defendant notified plaintiffs that it would not continue

to receive timber except at a lower price. The plaintiffs accepted this notice as final, and thereafter made no effort to induce the defendant to take the timber, although they were able, ready, and willing to deliver it in accordance with the terms of the contract.

In September, 1931, the defendant furnished plaintiffs a statement showing the sum then due them; and again in 1932, after the levee board suit was terminated, the defendant at the request of the plaintiffs furnished them a statement showing the proceeds of the operations that had accumulated in the hands of the defendant from October, 1929, when the above-mentioned debts were paid in full, to that time, amounting to $9,364.72, which sum on October 10, 1932, was paid to the plaintiffs, or to others at their direction. No credits for interest were included in the statements. Nothing was said at the time these statements were rendered either by plaintiffs or defendant about interest or a claim for damages for defendant's refusal to receive the balance of the timber on the land. One of the plaintiffs testified that he had been informed that the defendant was in financial difficulties; that he purposely said nothing about interest, or a breach of the contract; and that he desired to avoid a controversy about disputed claims because he first wanted to collect the sum the defendant admitted owing the plaintiffs.

On October 12, 1932, counsel for plaintiffs wrote defendant a letter calling its attention to the interest provision of the contract and requesting check in payment. On October 22, 1932, counsel for plaintiffs again wrote defendant relative to the interest item; and again on March 30, 1933, when it was also stated that a claim for damages would be made for refusal to take the balance of the timber. A suit was commenced in April, 1933, to recover on both claims.

The defendant denied owing the plaintiffs the interest item on the ground that it legally retained balances due plaintiffs because of the levee board suit against them, and it denied liability for refusal to receive the balance of the timber on the ground that the plaintiffs had breached the contract by not delivering the timber in accordance therewith. The defendant further alleged that after the suit was commenced by the levee board and after the Chicago Mill & Lumber Company had been made a party defendant and charged with liability for the timber received from the land, a new agreement was made in November, 1927, providing that the plaintiffs were to continue to cut and deliver timber, that the proceeds therefrom were to be applied on the indebtedness until it was paid; that, after a decision in said suit, if favorable to the plaintiffs, a final accounting and settlement would be made; that after said suit was terminated, the final accounting and settlement was made and the defendant on October 10, 1932, paid the plaintiffs the sum of $9,364.72 in full settlement of all obligations under the contract; and further that the sum of $2,779.61 was paid to the plaintiffs from February to July, 1932, with the definite understanding that the contract had been abrogated, was no longer in effect, and that final settlement was being held in abeyance pending the termination of the levee board suit.

The evidence shows that if the plaintiffs are entitled to recover, they should have interest in the sum of $1,666.24 and damages for refusal to receive the balance of the timber in the sum of $19,883.00, or a total of $21,549.24. The plaintiffs made a prima facie case on both claims, consequently we must consider whether the evidence also showed a clear defense.

At the close of the plaintiffs' case the court directed a verdict for the defendant. In ruling on the motion the court said: "Let the record show that the motion is granted upon the ground that when the plaintiffs made the settlement and accepted the money, without notifying the defendant that they intended to claim a breach of the contract and interest upon the money, that they estopped themselves from later claiming these damages for breach of the contract and interest on the money."

The defendant contends: (1) That the plaintiffs are estopped, the ground on which the court sustained the motion for a directed verdict; (2) that there was an account stated and the agreed balance paid; (3) that the interest clause was not applicable; and, if it were, defendant was justified in holding balances without interest because of the suit involving the plaintiffs' title; and (4) that it is not liable for refusal to receive the balance of the timber because the contract was canceled by failure of the plaintiffs to deliver the timber in accordance with the original contract and by the execution of subsequent agreements.

## Estoppel.

■ The essential elements of estoppel, as applicable in this case, are: (1) Ignorance of the party claiming estoppel of the matter asserted; (2) silence concerning matter where there is a duty to speak amounting to misrepresentation or concealment of a material fact; (3) action by the party relying on the misrepresentation or concealment; and (4) damages resulting if the estoppel is denied. Grouf v. State National Bank (C. C. A.) 40 F.(2d) 2; Hirning v. Federal Reserve Bank of Minneapolis (C. C. A.) 52 F.(2d) 382, 82 A. L. R. 297; California Prune & Apricot Growers, Inc., v. El Reno Wholesale Grocery Company (C. C. A.) 15 F.(2d) 839; McCullough v. Satterthwait (C. C. A.) 11 F.(2d) 111; Detroit T. & I. R. Co. v. Detroit & T. S. L. R. Co. (C. C. A.) 6 F.(2d) 845; Central Improvement Company v. Cambria Steel Company (C. C. A.) 210 F. 696; Pettit-Galloway Company v. Womack, 167 Ark. 356, 357, 268 S. W. 353; Indiana Lumbermen's Mut. Insurance Co. v. Meyers Stave & Manufacturing Co., 164 Ark. 359, 261 S. W. 917.

■ These elements are definitely lacking in this case. (1) The situation was as fully known to the defendants as to the plaintiffs. The contract for the payment of interest on balances due the plaintiffs and for the sale of all the timber on the land was in writing. The measurements and inspections were made and the books kept by the defendant. There was no dispute as to the quantity and variety of timber delivered. The final payment was made on a statement furnished by the defendant. The evidence disclosed no fact relative to the transaction known to the plaintiffs that was not equally well known to the defendant. (2) The plaintiffs by their silence concealed no material fact that they were under a duty to disclose. Notice from them that they claimed that the defendant had violated the contract was not required. Apparently, the court below was of the opinion that when the plaintiffs received the statement from the defendant showing the sum due them and before accepting that sum, they were under a duty to notify the defendant that they intended to assert claims for interest and for refusal to receive the balance of the timber; and that by concealing such intention they estopped themselves from recovering on the claims involved in this case. They were entitled to take the money which the defendant admitted was due them without placing themselves under a duty to tell the defendant that they intended to make further claims. In British America Assurance Co. v. Law, Union & Rock Insurance Co. (C. C. A.) 39 F.(2d) 416, 420, the court said: "No estoppel can arise from the payment of a debt admitted to be due." (3) The defendant did not act because of any misrepresentation or concealment by the plaintiffs or because of anything the plaintiffs did. The defendant paid the money to the plaintiffs because it admittedly owed them the sum paid. (4) The defendant was not damaged by paying the plaintiffs the sum it admitted owing them. If plaintiffs, before receiving payment, had notified the defendant that they were going to make additional claims, the defendant might then have refused to pay a debt that it admitted owing them; and if suit then had been commenced, undoubtedly the defendant would have tendered the sum it admitted owing which was the identical sum paid. In other words, the defendant was not damaged by its action; it merely paid a debt it admitted owing. The cause of action against it on the contract became no better or no worse. The doctrine of estoppel does not apply.

### Account Stated.

■ The defendant contends that there was an account stated when the defendant furnished the statements and made the payment to the plaintiffs which was accepted by them on October 10, 1932. An account stated is an agreement between parties covering previous transactions that all the items of the account and the balance struck are correct, coupled with a promise, express or implied, for the payment of such balance. Daube v. United States (Ct. Cl.) 59 F.(2d) 842, affirmed, 289 U. S. 367, 53 S. Ct. 597, 77 L. Ed. 1261; Falcone v Paradiso, 60 App. D. C. 348, 54 F.(2d) 715; Chinn v. Lewin, 57 App. D. C. 16, 16 F.(2d) 512, 40 A. L. R. 1480; Bell Lumber Company v. Alewine, 163 Ark. 164, 259 S. W. 373.

The Supreme Court in Standard Oil Company v. Van Etten, 107 U. S. 325, 333, 1 S. Ct. 178, 185, 27 L. Ed. 319, said: "An account rendered becomes an account stated, unless objected to within a reasonable time; * * * what constitutes a reasonable time * * * is a question of law; and * * * an account stated cannot be impeached except for fraud or mistake." The Supreme Court of Arkansas in Law-

rence v. Ellsworth, 41 Ark. 502, 507, said: "Where parties have had mutual dealings, and one renders to the other a statement, purporting to set forth all the items of indebtedness on the one side and of credit on the other, the account so rendered, if not objected to in a reasonable time, becomes an account stated, and cannot afterwards be impeached, except for fraud or mistake." This rule was followed in Griffith v. Hicks, 150 Ark. 197, 233 S. W. 1086, 18 A. L. R. 882; Continental Supply Company v. Robertson, 166 Ark. 52, 265 S. W. 659. In Bell Lumber Company v. Alewine, supra, the court held that in an account stated it is necessary that the statement of the account should be submitted to the party sought to be bound and that both parties either expressly or impliedly assent to it as being correct. In Miller et al. v. Pyrites Company et al. (C. C. A.) 71 F.(2d) 804, the court held that a claim for unliquidated damages cannot form the basis of an account stated.

The facts in this case, when the legal principles are applied, do not meet the requirements of an account stated. In September, 1931, the defendant gave the plaintiffs a statement showing the balance due them for timber theretofore delivered. On October 8, 1932, shortly after the levee board suit was terminated, the defendant again furnished a statement to the plaintiffs showing the balance due them. No item of interest on balances was included in either statement. No mention was made on either occasion by either party of interest or of a claim for damages for refusal to receive the balance of the timber on the land. The manager of the defendant on October 10, 1932, directed its bookkeeper in writing as follows: "As you know, we have been holding for some time money due Allen & Nelson on account of suit instituted against them by the St. Francis Levee Board. This case has now been decided, so that we have been authorized by our attorneys to make payment of the money due them, which at the present time is $9,364.72. * * * This represents the balance due them. * * *" This instruction was approved in writing by the plaintiffs and checks in payment of the sum were received by the plaintiffs or their order.

The defendant knew that the contract provided for interest; that it had refused to receive the balance of the timber on the land; and that the statements submitted by it made no mention of these items. Neither of them "purported to set forth all the items of indebtedness on the one side and of credits on the other." They were not full and complete statements of the account between the parties pertaining to their transactions, and the evidence does not show that they were considered by the parties as such. The statements merely showed the balance the defendant owed for timber received.

The evidence does not show an agreement as to the balance due the plaintiffs. It does not show that the plaintiffs assented, either expressly or impliedly, to the statements as showing the full amount due them. It does not show a meeting of the minds. It does show that they approved the written instruction to an employee of the defendant to pay them and that the document recited, "This represents the balance due them"; but a jury might have interpreted this, and all the evidence connected with it, to mean that the defendant submitted statements showing the balance due for timber received, not including interest on balances, and that none of the parties considered that a full and complete settlement of all their accounts was being made.

There is another reason why there was not an account stated between the parties. The claim for refusal to receive the balance of the timber was unliquidated and could not form the basis for an account stated, unless there had been a definite agreement of compromise and settlement of the claim, and this, the evidence does not sustain.

### Claim for Interest.

The defendant contends that the reciprocal interest clause is not applicable because the plaintiffs accepted the principal. Where interest is recoverable only as damages and payment of the principal is accepted as such, interest cannot be recovered because payment of the debt extinguishes the right to recover interest thereon. Stewart v. Barnes, 153 U. S. 456, 14 S. Ct. 849, 38 L. Ed. 781; Hammond v. Carthage Sulphite Pulp & Paper Company (D. C.) 34 F.(2d) 157; Graves v. Saline County (C. C. A.) 104 F. 61; Southern Railroad Company v. Dunlop Mills (C. C. A.) 76 F. 505.

Where a claim for interest is based on a contract, express or implied, acceptance of the principal debt will not defeat the

right to recover accrued interest in a subsequent action. New York Trust Company v. Detroit T. & I. Railway Company (C. C. A.) 251 F. 514; Bennett v. Federal Coal & Coke Co., 70 W. Va. 456, 74 S. E. 418, 40 L. R. A. (N. S.) 588 and note, Ann. Cas. 1913E, 578.

■ Clearly, the right to recover interest after the principal has been received and accepted depends on whether the interest is due by the terms of a contract or as damages in an action for the principal. When the right to interest is based on a contract, it becomes a substantive part of the debt itself and is recoverable even though the principal debt has been paid and extinguished; but where the interest is in the nature of damages for the breach of a duty, or a contract not providing for interest, it can be recovered only with the principal. Of these two well-defined classes of cases, the one before us belongs to the former for the simple reason that the contract involved expressly provided for the payment of interest.

■ The defendant contends that even if the interest clause is applicable, it was justified in terminating the contract and holding the money without interest because of the suit of the levee board against the plaintiffs. When the plaintiffs' title was attacked, the defendant unquestionably was entitled to protect itself from possible claims by both these contesting parties. It could have done so by terminating the contract, but it did not terminate the contract. Notwithstanding the suit the plaintiffs continued to cut and deliver timber and the defendant continued to receive it and to apply the proceeds to the payment of the indebtedness above mentioned—the greater part of which was due to itself—and when the debts were liquidated to hold the balance. Obviously both parties for very evident reasons desired to continue operations under the contract. The defendant could have protected itself, and likewise the fund in its hands, by paying it into court in the levee board suit or by impounding it in a depository acceptable to all parties pending the outcome of the suit. Then the defendant with some plausibility might have denied liability for interest. Apparently it held the money as its own subject to the rights of its creditors, used it, and did nothing to relieve itself of responsibility for it or from paying interest on it. The interest provision of the contract was applicable and the defendant was bound by it.

### Claim for Loss on Timber.

■ The contract involved in this case clearly provided for the sale of all the timber on the land. The evidence shows a balance of approximately 3,000,000 feet. The defendant notified the plaintiffs in September, 1931, that it would not receive more timber at the contract price. One of the plaintiffs testified that they were able, ready, and willing to proceed with the operations, and that defendant's manager suggested a lower price.

The defendant offers two reasons for its refusal to receive the balance of the timber: First, the levee board suit; and, second, the failure of the plaintiffs to deliver in quantities provided by the contract.

Counsel for defendant state that the levee board suit gave the defendant "a perfect right to continue to demand delivery and receive logs thereunder so long as it desired, or abandon so doing at pleasure"; and, further, that the defendant "had the right to continue or terminate the contract at will." This is equivalent to saying that the defendant was not bound by the contract, but the plaintiffs were. The authorities do not sustain this position. A right to rescind, abrogate, or cancel a contract must be exercised promptly on discovery of the facts from which it arises. Harwood v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 32 F.(2d) 680; Ripley v. Jackson Zinc & Lead Co. (C. C. A.) 221 F. 209. The right to cancel or rescind a contract because of a breach may be waived by continuing to treat it as a subsisting obligation. McLean v. Clapp, 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804; Merchants' Bank v. Hanna (C. C. A.) 73 F.(2d) 818; Ford Motor Company v. Pearson (C. C. A.) 40 F.(2d) 858. A party to a contract cannot avail himself of the benefits of it and at the same time deny the responsibilities imposed by it. The defendant in this case elected to recognize the continued existence of the contract and not to cancel it for any reason. Whether there had been a breach by the plaintiffs that justified its refusal to receive more timber was a question that should have been submitted to the jury.

### Accord and Satisfaction.

■ As there may be a new trial of this case it should be observed that the evidence does not show an accord and satisfaction. Accord and satisfaction is the discharge of a contract, or a disputed claim

arising either from a contract or from a tort, by the substitution of an agreement between the parties in satisfaction of such contract or disputed claim, and the execution of that agreement. To constitute an accord and satisfaction there must be an offer in full satisfaction of the obligation, accompanied by such acts and declarations as amount to a condition that if accepted it is in full satisfaction; and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts, he does so subject to the conditions imposed. Karrick v. McEachern, 55 App. D. C. 77, 2 F.(2d) 126; Hudson v. Yonkers Fruit Company, 258 N. Y. 168, 179 N. E. 373, 374, 80 A. L. R. 1052; 1 Corpus Juris, p. 557, § 80. In this connection the court in the Yonkers Fruit Company Case said: "Two forms of accord and satisfaction of unliquidated claims are to be discovered in the books. One is where there is a true assent to the acceptance of a payment in compromise of a dispute, or in extinguishment of a liability uncertain in amount. 1 Williston on Contracts, § 135; 3 Id. § 1851; Am. L. Inst., Restatement of Contracts, draft No. 9, § 36-A; Fuller v. Kemp, 138 N. Y. 231, 237, 33 N. E. 1034, 20 L. R. A. 785; Wahl v. Barnum, 116 N. Y. 87, 22 N. E. 280, 5 L. R. A. 623. The other is where the tender of the payment has been coupled with a condition whereby the use of the money will be wrongful if the condition is ignored. Protest will then be unavailing if the money is retained. What is said is overridden by what is done, and assent is imputed as an inference of law. 3 Williston on Contracts, §§ 1855, 1856; Am. L. Inst., Restatement of Contracts, draft No. 9, § 38-A."

Acceptance by the plaintiffs of the sum the defendant admitted owing them did not constitute a settlement of their claims for a breach of the contract. Fire Insurance Company v. Wickham, 141 U. S. 564, 12 S. Ct. 84, 35 L. Ed. 860; Jefferson Standard Life Insurance Company v. Lightsey (C. C. A.) 49 F.(2d) 586; Keene v. Gauen (C. C. A.) 22 F.(2d) 723; McGehee v. Cunningham, 181 Ark. 148, 25 S.W.(2d) 449.

Our attention has been directed to paragraph 6 of the contract which provides that if plaintiffs failed or refused for a period of thirty days to diligently and in good faith deliver the timber in accordance with the contract, then the defendant may decline to accept any more timber under the agreement. Whether the conditions justifying the defendant in declining to accept more timber existed at the time it refused was a question of fact for the determination of the jury. It was not so conclusively established at the trial as to justify the court in making such a declaration.

The evidence does not show that the contract was abrogated by the execution of subsequent agreements as alleged by the defendant.

The judgment is reversed and the case remanded for a new trial.