## FITZHUGH v. SMITH.*
### No. 11076.

Circuit Court of Appeals, Eighth Circuit.
July 13, 1938.

*Rehearing denied Aug. 18, 1938.

Thomas S. Buzbee, of Little Rock, Ark. (H. T. Harrison, A. S. Buzbee, and Edward L. Wright, all of Little Rock, Ark., on the brief), for appellant.

R. B. McCulloch, of Forrest City, Ark., (Burk Mann, of Forrest City, Ark., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a suit in equity by Alex Fitzhugh, as trustee, against a co-guarantor Henry K. Smith, for contribution and for an accounting. After a trial a decree was entered dismissing the bill of complaint for want of equity, from which plaintiff appeals. Parties will be referred to as they appeared below.

The bill of complaint, filed September 8, 1932, is in two counts, each alleging liability arising out of a different enterprise. The first count states that about 1910 Fitzhugh, Smith, and several other persons organized an Arkansas corporation under the name of Hunter Rice and Stock Farms. When, in 1923, this corporation needed more money it arranged to borrow from a bank; and Fitzhugh, Smith, and others executed a written guaranty in favor of the bank in the amount of $25,000. In 1926, when the corporation needed further funds, this same group of persons, except S. F. Prouty, executed another continuing guaranty increasing the amount guaranteed to $40,000. On January 1, 1928, the corporation owed the bank $30,500, and the guarantors, being the principal stockholders in the corporation, decided to liquidate it. They therefore executed a trust agreement which provided that when any of the various guarantors paid a portion of the indebtedness, the corporation's notes so taken up were to be held by Fitzhugh as trustee for the benefit of those guarantors who had made the payments. On April 15, 1928, the corporation's debts were fully paid, but defendant Smith failed by the amount of $6,291.66 to pay his proportionate share. The plaintiff prays judgment against Smith upon count one in that sum, with interest.

Count two alleges that prior to 1919 Fitzhugh, Smith, and others organized an Arkansas corporation under the name of Little Prairie Rice Company. In 1919 the stockholders guaranteed the debts of the company up to $45,000. When, in 1928, it was decided to liquidate the company Fitzhugh was appointed trustee to handle the remaining assets, to collect from the guarantors the proportion due from each, and to pay off the company's remaining debt. By July 1, 1929, the company's debts were paid in full, but defendant Smith had not paid his proportionate share. In recognition of that fact he executed his note in favor of Fitzhugh, Trustee, in the amount of $4,820. Nothing has been paid on this note except $590. 133 acres of land and certain personal property of the corporation held by the trustee for liquidation were turned over to defendant for handling and sale, and the bill alleges that defendant has disposed of a large portion of this personal property without accounting for it. Defendant also has in his possession a life insurance policy which is being carried for the benefit of the guarantors. Count two of the bill prays that defendant be required to account for the personal property and rents and profits of the land, that he be required to turn over the insurance policy to the trustee, and that a money judgment be given on the note.

In his answer, filed October 17, 1932, defendant admits his participation in both transactions pleaded in the bill of complaint, but denies that he is now indebted to the plaintiff in any sum. He further denies that he possesses any rents or profits from the land or any proceeds of the personal property. By way of cross-complaint defendant alleges that he is entitled to credits totalling almost $19,000 against the plaintiff. These credits include money paid out to reimburse another guarantor, money paid for the account of the Hunter Company, and 80 acres of land conveyed to

the plaintiff. Defendant prays that an accounting be had, and that a judgment be given for the balance due him from the plaintiff trustee. Plaintiff, in an answer to the cross-complaint, denies that defendant is entitled to credit for the sums said to have been paid out, and alleges that the 80 acres of land were conveyed to him by defendant as security and is still held as such.

After receiving evidence, which consisted mainly of depositions by Fitzhugh and Smith and some exhibits, the court entered a decree in favor of defendant which recited: "the Court finds that subsequent to the filing of this cause the defendant conveyed to the plaintiff a certain, eighty-acre tract of land and also assigned to plaintiff his undivided one-half interest in what is known as the Paul Gehring note and that said transfer and assignment were in full settlement of any rights or claims of plaintiff against the defendant."

Other than this recital in the decree there were no findings of fact or conclusions of law as required by Equity Rule 70½, 28 U.S.C.A. following section 723.

■ First. It is the practice in Arkansas, as elsewhere generally, that accord and satisfaction is an affirmative defense which to be available must be pleaded. St. Louis, K. & S. R. R. v. United States, 267 U.S. 346, 45 S.Ct. 245, 69 L.Ed. 649; Eadie v. Carnes, 170 Ark. 206, 279 S.W. 381. In this case it was not specially pleaded, and there were no facts alleged from which the court could infer that there had been such a settlement. The record shows no attempt to amend the pleadings at the trial.

■ Second. The only evidence that there was a settlement is in the testimony of defendant Smith. He stated that between 1917 and 1935 he and Fitzhugh had owned an 800-acre farm in partnership. When that farm began to lose money Fitzhugh supplied the funds to operate it. On September 18, 1935, the 800 acres, title to which was then in Smith's name, subject to a mortgage, were sold to Paul Gehring. The equity of the partnership was estimated to be $9,470.71, and the contract of sale provided that Gehring would pay this amount in cash to Fitzhugh. Smith testified that his share of the payments on this contract were accepted by Fitzhugh as a credit "on the joint liabilities of the farm."

Smith further testified: "On August 23, 1930, I conveyed an eighty-acre tract of land to Mr. Fitzhugh to use in any way he pleased to take care of any losses I might be liable for."

On redirect examination the following occurred: "Mr. Mann [counsel for defendant]: As I understand it, when you delivered to Mr. Fitzhugh the Paul Gehring papers which represented a liability of Paul Gehring to you and Mr. Fitzhugh for $9470.71 and also conveyed to him the eighty-acres of land that you owned individually that you liquidated your liability growing out of any losses in connection with these two corporations? A. That is right."

Fitzhugh, in rebuttal, testified that the 80-acre tract of land, which was nearly worthless, had been deeded to him as partial security for Smith's share of the partnership debts which amounted to $8,000 in addition to the mortgage. The equity in the 800-acre farm was given to Fitzhugh, he said, as partial collateral against the liability of the Hunter Rice and Stock Farms guarantee, but had first to be used to pay the $8,000 partnership indebtedness.

A reading of the whole record is convincing that the evidence does not sustain a finding that there was such a settlement as would be a complete defense to this suit. Whatever agreement defendant may have entered into, it was with Fitzhugh individually and not Fitzhugh as trustee for the co-guarantors. This is shown by the testimony of Smith that the 80-acre tract was to be used by Fitzhugh "in any way he pleased to take care of any losses I might be liable for;" and the testimony of both parties that the Gehring contract was to be devoted in part at least to the discharge of partnership obligations. The Gehring contract ran in favor of Fitzhugh, individually, and made no mention of his capacity as trustee. The import of the testimony is that the deed to the 80-acres was in like form. There is no evidence that the trust ever received anything, either promises or property, in exchange for the alleged release. Compare Nelson v. Chicago Mill & Lumber Co., 8 Cir., 76 F.2d 17, 100 A.L.R. 87.

■ Third. Failure to make separate findings of fact as required by Equity Rule 70½ has heretofore been held to be sufficient grounds for remanding a case to the district court. Edwards v. Holland Banking Co., 8 Cir., 75 F.2d 713; Hum-

896

phrey v. Helgerson, 8 Cir., 78 F.2d 484; Clarke v. Gold Dust Corp., 3 Cir., 91 F.2d 12; Southwestern Bell Telephone Co. v. San Antonio, 5 Cir., 75 F.2d 880; Boss v. Hardee, 68 App.D.C. 75, 93 F.2d 234; see State Board of Tax Com'rs v. Jackson, 283 U.S. 527, 535, 51 S.Ct. 540, 542, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536; cf. Panama Mail S. S. Co. v. Vargas, 281 U.S. 670, 50 S.Ct. 448, 74 L.Ed. 1105; Public Service Comm. v. Wisconsin Tel. Co., 289 U.S. 67, 53 S.Ct. 514, 79 L.Ed. 1036.

■ The ultimate disposition of this case appears to depend upon questions of fact relating to the various items claimed by defendant. The record in this connection is the more confusing because the plaintiff, in his requested findings of fact which he filed with the trial court, set out various items claimed by defendant, totalling $13,-058.74, exclusive of interest, and then asked the court to find: "The Court finds that the defendant is entitled to each of said credits together with interest thereon from the date the credits accrued until paid at the rate of 6% per annum, and when the account is thus adjusted, judgment will be rendered against the plaintiff or the defendant for any balance as the case may be." Had the court accepted these proposed findings judgment in a large sum would apparently have been entered for defendant. In the brief these items are all disputed with the exception of one, a credit of $590.

The condition of the record is such that it is impossible for this court to determine the rights of the parties in the absence of pleadings covering the issues tried and findings of fact. The bill of complaint was filed in the district court September 8, 1932, was amended September 26, 1932, and has not been amended since that time. The answer and cross complaint was filed October 17, 1932, and amended on December 12, 1932. The case was tried and a decree entered November 15, 1937. The testimony, notwithstanding the pleadings were not amended, covered transactions down almost to the time of the trial.

The decree is accordingly reversed with instructions to permit the parties to amend their pleadings, if they so elect; to introduce additional testimony, if the court deems it helpful or necessary to a complete and final disposition of the case; and for the court to make findings of fact and conclusions of law in accordance with Equity Rule 70½.

Reversed.